# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MCHIGAN

| | |
|---|---|
| **NATHANIEL SPENCER III**<br>*Plaintiff.*<br><br>**vs**<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; EQUIFAX, INC.; EQUIFAX INFORMATION SERVICES, LLC**<br>*Defendants* | **Case No 1:18-cv-194**<br><br><br><br><br>**TRIAL BY JURY DEMANDED** |

## FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FCRA

### JURISDICTION

1. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

2. All conditions precedent to the bringing of this action have been performed.

### PARTIES

3. The Plaintiff in this lawsuit is Nathaniel Spencer III, a natural person, who resides in Kalamazoo County, Michigan.

4. Defendant Experian Information Solutions, Inc. (Experian) along with its subsidiaries, affiliates and partners operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

5. Experian, its subsidiaries and partners sell consumer information and data derived from consumer information in its consumer file(s) in a number of products and services to customers such as offering their "Collection Triggers℠"[1] (also see Exhibit 4) service which operates on consumer data updated daily on an immense database of over 220 million consumers known as "File One℠ [Exhibit 4] as just one example and generates hundreds of millions of dollars in revenue annually.  Experian gathers massive amounts of consumer information daily as stated on their own web page[2] [Exhibit 4] "Experian's U.S. Consumer View marketing database covers over 300 million individuals and 126 million households. With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes." Experian markets a product for businesses to target people for financial products using its financial data solutions stating, "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct)." on that same web page.

---

[1] http://www.experian.com/consumer-information/debt-collection.html (last visited 04-08-18)
[2] https://www.experian.com/marketing-services/targeting/data-driven-marketing.html (last visited 04-08-18)

6. Defendant Equifax, Inc. (Equifax) along with its subsidiaries *operates* as a
   Consumer Reporting Agency ("CRA") regulated by the Fair Credit Reporting
   Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with Equifax Inc. corporate offices at
   1550 Peachtree Street, Atlanta, GA 30309.

7. Equifax, Inc. is the parent of Equifax Information Services, LLC (EIS).  In prior
   litigation it has taken the position it is not itself a "consumer reporting agency"
   governed by the FCRA. See 15 U.S.C. § 1681a(f) ("The term "consumer
   reporting agency" means any person, who for monetary fees,  dues, or on a
   cooperative nonprofit basis, regularly engages in whole or in part in the practice
   of assembling or evaluating consumer credit information or other information
   on consumers for the purpose of furnishing consumer reports to third parties,
   and which uses any means or facility of interstate commerce for the purpose of
   preparing or furnishing consumer reports.")

8. But of course, Equifax, Inc. *is* a consumer reporting agency.  For purposes of
   the FCRA Equifax, Inc. has held itself out repeatedly to consumers, regulators
   and the public generally as the actual operating entity.  Even the United States
   Congress recognizes Equifax, Inc. as a consumer reporting agency as evidenced
   by a recent letter to it from the Committee on Oversight and Government
   Reform, see Exhibit 5.

9. The copyright on the Defendants' consumer website plainly states "Copyright 2018 Equifax, Inc."[3], (also see EXHIBIT 4, in the small print at the bottom of pgs. 2 and 5). Why doesn't EIS own the copyright of this website that deals with information contained in the consumers file if the only corporate entity that deals with consumer file information is EIS. Despite the website being plastered with the Equifax logo the only corporate entity to tie the website to is **Equifax, Inc**. there was even a place on their website selling "Equifax Credit Report and Score" services[4] (also see Exhibit 4 near the bottom of pg.2) you'd expect to see EIS's name, somewhere right? Wrong, all I found was Equifax,INC at the bottom of the page as the owner of the website "Copyright 2018 Equifax All rights reserved Equifax and the Equifax marks used herein are trademarks of Equifax,INC" [Exhibit 4] Instead Equifax INC. owns the copyright of this website, would that not in itself not put Equifax, INC in the business of a CRA by the plan language of FCRA 15 U.S.C. § 1681a(f) "....consumer reporting agency" means any person, **who for monetary fees**, dues, or on a cooperative nonprofit basis, regularly engages in **whole or in part in the practice... uses any means** or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." Defendants have in many cases held Equifax, Inc. out as the operating and responsible entity but

---

[3] https://www.equifax.com/personal/ (last visited on 04-08-18)
[4] https://www.equifax.com/personal/products/credit/report-and-score/ (last visited on 04/08/18)

argue in litigation that EIS is the consumer reporting agency not Equifax, Inc. How a company factually operates is what matters under the FCRA not how it says it operates. It appears that Bloomberg.com agree with the U.S Congress and Mr. Spencer in regard to what Equifax, Inc.[5] is.  On Bloomberg.com, a highly respected news organization, they describe the Defendant operations as folows, "Equifax Inc. brings buyers and sellers together through its information management, transaction processing, direct marketing, and customer relationship management businesses. **The Company serves** the financial services, retail, credit card, telecommunications, utilities, transportation, information technology, and healthcare industries and government."

10. Equifax, Inc. and its subsidiaries such as Equifax Information Services LLC (EIS) and Equifax Consumer Services, LLC (ECS) *operate* as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

11. Equifax, Inc. and its subsidiaries including EIS *operate* using the same "Equifax" logo with no differentiation between entities when interacting with

---

[5] https://www.bloomberg.com/quote/EFX:US (Last visited on 04/08/18)

consumers via mail and otherwise. By virtue of different subsidiaries and divisions operating without any impediments of corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one **Equifax** entity from another.

12. Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities. The business operations are fully coordinated, and shared resources are cross-applied without full and complete profit and cost centers. Management decisions at EIS and ECS as well as other divisions are made by and through Equifax, Inc. And the entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files. Its customer base is vast including state and federal governments generating hundreds of millions if not billions of dollars in revenue annually.

13. The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer reporting agency from circumventing or evading treatment as a nationwide consumer reporting agency" by means of corporate organization or restructuring.

14. Equifax, Inc. and its subsidiaries – whether or not they observe state law corporate formalities – have eliminated nearly all lines between their different

business entities in the collection, maintenance, sharing and furnishing of
consumer reporting information.  Equifax, Inc. entities such as EIS regularly
share FCRA restricted information with sibling ECS to market and profit from
the sale of identity theft products including the blurring of legal lines between
providing file information under the FCRA versus private sale to the consumer.
It does so with a number of Equifax related entities such as TALX Corporation,
eThority, Anakam, Inc. not to mention Equifax Mortgage Services.

15. To remain separate and distinct for purposes of liability in this action,
Defendants Equifax, Inc. and Equifax Information Services, LLC **must operate**
as separate and legally as well as operationally distinct entities.  Here for
matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc.
For purposes of how consumer data was handled, warehoused, used and sold
the corporate lines were disregarded in practice.  EIS, ECS and other
subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the
corporate consumer credit business.  Equifax, Inc., EIS, ECS and other
subsidiaries share full unity of interest such that the separate personalities of the
corporation and subsidiaries no longer exist as they operate as one consumer
reporting agency under the FCRA.

16. Defendant Trans Union, LLC (Trans Union) along with its subsidiaries and
affiliates **operates** as a Consumer Reporting Agency regulated by the Fair

Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with corporate offices at 555 W. Adams Street Chicago, IL 60661.  Trans Union operates as a single FCRA governed consumer reporting agency.  Trans Union, LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities, However, it freely transfers data between units and operates without any impediments of corporate structure for example within its "suite of products" is Prama Data Extract[6] (also see Exhibit 4) which allows the user to "Query TransUnion depersonalized, archive credit data via self-service, on-demand, point-and-click access.  Query against %100 of depersonalized TransUnion credit data..."  suggesting that TransUnion may have an archive of personalized data that Plaintiff has the right to see according to 15 U.S.C. § 1681g(a)(1). I also found on their own website where they boast[7] "TransUnion's suite of mission-critical solutions provides the public sector with vital information and an **unmatched combination of credit and non-credit data**...." Further on in this shocking document they go on to say that their services have the ability to "...Quickly identify and assess behavioral changes of individuals before a serious threat situation occurs."  What data are they using for this service?  What if this data was incorrect, and you are being

---

[6] https://www.transunion.com/product/prama-datahub (Last visited 04/08018)
[7] https://www.transunion.com/industry/government (last visited 04/08/18)

labeled as an "insider threat" without your knowledge or ability to dispute the incorrect information because you have no idea what that information is because the defendant refuses to comply with 15 U.S.C. § 1681g(a)(1), is it possible that this hidden information could have a negative impact on a consumer and in some cases shade the consumer in a negative light completely unbeknownst to him?   In almost every material regard, the Trans Union units/suites *operate* as if they are one and the same, a single consumer reporting agency.

## VENUE

17. The occurrences which give rise to this action occurred in Kalamazoo County, Michigan and Plaintiff resides in Kalamazoo County, Michigan.

18. Venue is proper in the Western District of Michigan.

## GENERAL ALLEGATIONS

19. Plaintiff wanted to obtain his **full consumer file disclosure** to obtain all information recorded and maintained in Defendants' files and/or databases about him as 15 U.S.C. § 1681g(a)(1) states he is entitled to.  Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer **all information in the consumer's file at the time of the request**. 15 U.S.C. § 1681g(a)(1).  Plaintiff

looked at the annualcreditreport.com website which was set up and is operated by the Defendants but could find no place on that website where he could request his **full consumer file disclosure.** Instead he found only where he could request a "credit report" which is NOT what he wanted or what § 1681g(a)(1) states he is entitled to upon request as a consumer. Plaintiff then decided to write to each of the Defendants directly and **made a very deliberate and specific request to obtain his full consumer file disclosure** which he is entitled to under 15 U.S.C. § 1681g(a)(1), **NOT** just a conventional credit report.

20. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Experian on September 22, 2017. See Exhibit 1.

21. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a credit report which was only about 12 pgs. and a letter describing the process of filing a dispute about information in the credit report See Exhibit 3, which was not responsive to his request.

22. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Equifax on September 24, 2017 See Exhibit 1.

23. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a letter explaining how to initiate an investigation of information contained in the credit report See Exhibit 3. The letter states "Thank you for requesting your credit file, commonly called a Consumer Credit Report….." although this letter does provide the contact information For Equifax Information Services LLC, it was provided in the context of initiating an investigation on items in his credit report not providing the plaintiff with his full consumer file disclosure which is what he was clearly requesting. A credit report was also included in this correspondence and was only about 16 pgs., which was not responsive to his request for a **Full Consumer File Disclosure**.

24. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Trans Union on September 25, 2017 See Exhibit 1 attached.

25. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a letter which starts off "Enclosed is the TransUnion Personal Credit Report that you requested…" See Exhibit 3 and a credit report which was only 5pgs. which was **NOT responsive to his request**.

26. Plaintiff, in making the exact same request of each of the Defendants, specified in great detail exactly what specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a **full consumer file disclosure** at

least once every 12 months at no charge when a request is made by a consumer. See Exhibit 1.

27. Plaintiff's request for a **full consumer file disclosure** from each Defendant was his first request for a **full consumer file disclosure** within 12 months and identification in the form of a legible copy of his social security card and Michigan driver's license was attached to the request for identification and location purposes.

28. After receiving a response from each Defendant that did not comply with the request made, Plaintiff made a second and final written request for a **full consumer file disclosure** for ALL the information in his file pursuant to the FCRA of each Defendant [Exhibit 2]. A copy or identical copy of the initial letter was sent with the second request for clarification along with identification in the form of a legible copy of Plaintiff's social security card and Michigan driver's license for identification.

29. **At no time did Plaintiff make any request for a personal credit report/disclosure or credit file/consumer credit report nor did plaintiff request information about how to dispute information within these documents** from the Defendants but instead was very specific in requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) as outlined in the initial request. [Exhibit 1]

30. In response to Plaintiff's second request for a **full consumer file disclosure** to Experian he received a credit report clearly stating "...we're pleased to send you this credit report..." which was 12 pgs. Long and was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

31. In response to Plaintiff's second request for a **full consumer file disclosure** to Equifax he received a letter stating in part he was not eligible for a free copy of his credit file and "....in addition to the Annual Free copy which is requested through the Central Source as **well as through Equifax.  A reasonable processing fee (currently $11.50) may be charged,...**" See Exhibit 3 which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

32. In response to Plaintiff's second request for a **full consumer file disclosure** to Trans Union he received nothing which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

33. All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

34. 15 U.S.C. § 1681g(a)(1) requires that ALL information in the possession of a CRA at the time of a consumer's proper request be disclosed in response to that request.  Nowhere in §1681g does the statute limit that information to the scope of credit or credit related data which may be included in a conventional credit

report. The statute clearly states ALL information regardless of its nature must
be provided other than clearly ancillary information excluded by §1681g(1)(B)
which Plaintiff clearly did NOT request [Exhibits 1,2]. The defendants attempt
to obfuscate the facts by using terminology other than the plain language of the
statute to describe what is required to be provided to Mr. Spencer upon his
requests which were very simple, and straight forward.

35. In each case with each Defendant there was only communication in the form of
letters requesting Plaintiff's **full consumer file disclosure** and response(s) by
each Defendant with no other party involved in the communications between
the parties other than the United States Postal Service (USPS) which
transported documents between the parties.

36. Plaintiff was aware of the recent hack of the Equifax database and had reason to
believe that more information than he had ever received in a conventional credit
report in the past had been stolen just from the massive publicity surrounding
the hack and his study of the consumer protection statutes including the FCRA.
He had been studying the FCRA prior to the hack and already realized there
was substantial information that companies like Equifax, Experian and Trans
Union had in their file(s) about consumers than had been included in a
conventional credit report he had received previously.

37. Plaintiff had **requested and received a** full consumer file disclosure from LexisNexis in January 2018 that contained about 86 pgs. Of consumer information including **10 individual reports** See Exhibit 6 <u>allot of the information about the plaintiff in some of these reports were sourced from Equifax dating back to 1990.</u> LexisNexis referred to the documents produced as plaintiffs "Full File Disclosure" To my surprise some of the information sourced from Equifax was never included in a conventional credit report that the plaintiff had received from the defendant in the past.  There was a **huge disparity** between the number of pages of the consumer information provided by each of the Defendants <u>in response to the same request made to LexisNexis.</u>

38. With substantial information shown in the lexisNexis Full File Disclosure with much of it not only being sourced from Equifax but not being present in the credit reports that they had provided the plaintiff in the past it was reasonable for the Plaintiff to deduce that information required to have been disclosed by the defendants had not been.  How could the Defendants be "the big three" in the consumer reporting business with so little information about Mr. Spencer in their files in comparison to what LexisNexis had?  That just doesn't make sense.  Why did Equifax provide LexisNexis with Plaintiffs personal information and then turn around and withhold that very same information from him when he requested his full consumer file disclosure.

39. It was obvious to the Plaintiff that information was being withheld by the Defendants rather than being disclosed as required by the FCRA. "Every consumer reporting agency shall, upon request, and subject to 15 U.S.C. § 1681g(a)(1) of this title, clearly and accurately disclose to the consumer **all information in the consumer's file at the time of the request**. 15 U.S.C. § 1681g(a)(1) (emphasis added) Defendants have deliberately, intentionally and in violation of the law refused to provide all information in their file(s)/databases that relates directly to Mr. Spencer

40. LexisNexis is a consumer reporting agency as well and is governed by the FCRA just as the Defendants are. Plaintiff had no direct knowledge of specific information regarding himself that was in the defendants file(s) but had very good reason to believe there was substantial consumer information based on the Lexis Nexis full file disclosure and publicity surrounding the Equifax hack. That information, if it existed, could only be obtained through requesting a **full consumer file disclosure** from the defendants pursuant to 15 U.S.C. § 1681g(a)(1) as he had from LexisNexis rather than asking for a conventional credit report as he had in the past through annualcreditreport.com.

41. Upon information and belief Defendants have far more information relating to Plaintiff in their file(s) and/or database(s) including archived information and additional information that is provided to prospective creditors, insures,

employers and other third parties  beyond that which Plaintiff has ever had

access to or had the opportunity to review for accuracy and is provided to others

when they make a request for consumer information related to him,  as

referenced earlier with Equifax providing information to LexisNexis but

withholding it from Plaintiff even after a lawful request for the information was

made.

42. Upon information and belief, the information that is not disclosed to the

Plaintiff may contain negative codes or erroneous account information, among

other things, that is provided to prospective creditors, insures or employers

which directly impacts how that prospective creditor, insurer, or employer

would view Plaintiff I terms of granting credit, rating insurance policies or

providing employment or even housing.

43. This undisclosed information has never been provided to Plaintiff even when it

was properly requested so he could examine it for accuracy and dispute if

necessary.  It could be blatantly false or at least misleading and without

disclosure by the Defendants.  Plaintiff would not have the opportunity to

dispute the accuracy or the voracity of the information in the Defendants files

which he is legally entitled to do under the FCRA.  Disclosure of false or

misleading information to other parties such as prospective creditors, insurers or

employers that Plaintiff knows nothing about could paint him in a false light

where he could be denied credit, housing, employment or pay higher interest rates on credit if it were granted and higher premiums for insurance harming him substantially.  The bottom line is the Plaintiff is entitled to that information after a proper request is made and it was not provided by the defendants.

44. The Defendants have **repeatedly refused** to provide Plaintiff with his **full consumer file disclosure** after multiple requests.  Plaintiff's requests were very specific in nature so as not to be misconstrued as a request for a credit report, credit disclosure or some other thing by the defendants.  Defendants attempt to obfuscate the requests using terminology such as "disclosure, credit and report" in various forms and in doing so did not respond properly as required by law to Plaintiff's very simple, deliberate and legal requests.

45. Plaintiff never made any request of the Defendants that used the words "credit" or "report" in any manner or context but made a straightforward, deliberate and very clear request **ONLY** for a **full consumer file disclosure** [Exhibits 1,2] to which he is entitled to under 15 U.S.C. § 1681g(a)(1)  and all Defendants failed to provide Plaintiff with **ALL** information in their file(s) at the time of the request as required by the FCRA.

46. Plaintiff clearly is not making any claim regarding information that **HAS** been provided to a third party that he is aware of.  The sole issue in this lawsuit revolves around the fact that he has not had access to ALL information in his

**full consumer file** that may have been at some time in the past provided to an unknown third party or **MIGHT** be provided at some time in the future to a third party and he is entitled to have access to by law to review for accuracy.

47. Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers. The ONLY information requested by Plaintiff was a **full consumer file disclosure** of information *directly* related to him as a consumer that affects his credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

48. Because Plaintiff has not had access to that undisclosed information he has therefore had no opportunity to review it and dispute the accuracy of it if it is false, yet it is provided to potential creditors, housing providers, insurers and employers without his knowledge and purposely and illegally concealed from him. Plaintiff has the right to his **full consumer file disclosure By Law** when it is properly requested which was clearly the case here and all Defendants failed to comply with Plaintiffs multiple lawful requests.

49. Upon information and belief when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be

shown that information.  There is no prohibition in the law that information

obtained by a user can be provided to the consumer if a request for it is made by

the consumer yet instructions from the Defendants are to the contrary.  Why?

50. One can only surmise that there must be some nefarious reason why that

information should not be provided to the consumer that is sent to the user in an

encrypted format with instructions to the user to conceal it from the consumer.

A reasonable assumption would be that it contains information that the

consumer has never seen and the consumer reporting agencies don't want the

consumer to see for some unknown reason.  This is obviously not in concert

with the mandate of full disclosure clearly articulated in the FCRA in

unambiguous plain language.

51. Plaintiff made multiple specific written requests of each of the Defendants for a

**full consumer file disclosure** to which he is entitled as clearly stated in 15

U.S.C. § 1681g(a)(1) and all Defendants have failed to provide his **full**

**consumer file disclosure** to Plaintiff and are therefore in violation of the

FCRA.

52. The claims made in this lawsuit are in NO manner related to the data breach

that occurred with Equifax.  The claims herein are entirely focused on the very

simple premise that all Defendants failed to provide a **full consumer file**

**disclosure** of all information in their files to Plaintiff upon his multiple requests

as required by 15 U.S.C. § 1681g(a)(1).  There is no relation of any claims

made herein to any issues with the Equifax data breach.

53. The actions of all Defendants occurred within the past 2 years and are within

the Statute of Limitations under the FCRA.

## COUNT I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

54. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

55. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

56. Experian operates as a consumer reporting agency within the meaning of the

FCRA, 15 U.S.C. § 1681a(f).

57. Experian repeatedly failed to comply with Plaintiff's multiple requests for a **full

consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Experian

for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to

15 U.S.C. § 1681n.  Together with other and further relief as the court may

deem reasonable and just under the circumstances

## COUNT II

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

58. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

59. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

60. Trans Union operates as a consumer reporting agency within the meaning of the

FCRA, 15 U.S.C. § 1681a(f).

61. Trans Union repeatedly failed to comply with Plaintiff's multiple requests for a

**full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Trans

Union for statutory damages of $1000.00, any attorney's fees, and all costs

pursuant to 15 U.S.C. § 1681n.  Together with other and further relief as the

court may deem reasonable and just under the circumstances

## COUNT III

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES, LLC

62. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

63. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

64. Equifax and its alter ego Equifax Information Services, LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

65. Equifax and Equifax Information Services, LLC repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Inc. and Equifax Information Services, LLC for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.  Together with other and further relief as the court may deem reasonable and just under the circumstances

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully Submitted,

Nathaniel Spencer III
2711 Chaparral St.
Kalamazoo MI 49006
269-599-7808
nathan.spenc.111@gmail.com