### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN

NATHANIEL SPENCER, III,
        Plaintiff,

      vs.

EXPERIAN INFORMATION
SOLUTIONS, INC.; EQUIFAX, INC.;
TRANS UNION, LLC;
        Defendants.

CASE NO. 1:18-cv-00194-PLM-PJG

Judge Paul L. Maloney
Magistrate Judge Phillip J. Green

## TRANS UNION, LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FCRA AND AFFIRMATIVE DEFENSES

Trans Union, LLC ("Trans Union"), by counsel, responds to Plaintiff's First Amended Complaint For Violations Of The FCRA [Doc. No. 16] (the "Complaint") as follows. For the Court's convenience, Plaintiff's allegations are set forth verbatim with Trans Union's responses immediately following.

### JURISDICTION

1.      This court has jurisdiction under 15 U.S.C. § 168lp and 28 U.S.C § 1331.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

2.      All conditions precedent to the bringing of this action have been performed.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

### PARTIES

3.      The Plaintiff in this lawsuit is Nathaniel Spencer III, a natural person, who resides in Kalamazoo County, Michigan.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

4.     Defendant Experian Information Solutions, Inc. (Experian) along with its subsidiaries, affiliates and partners operates as a Consumer Reporting Agency [sic] regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq*. and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

5.     Experian, its subsidiaries and partners sell consumer information and data derived from consumer information in its consumer file(s) in a number of products and services to customers such as offering their "Collection Triggers"[1] (also see Exhibit 4) service which operates on consumer data updated daily on an immense database of over 220 million consumers known as "File One" [Exhibit 4] as just one example and generates hundreds of millions of dollars in revenue annually.  Experian gathers massive amounts of consumer information daily as stated on their own web page[2] [Exhibit 4] "Experian's U.S. Consumer View marketing database covers over 300 million individuals and 126 million households.  With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes." Experian markets a product for businesses to target people for financial products using its financial data solutions stating, "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using

---

[1] http://www.experian.com/consumer-inforrriation/debt-collectiori.htrnl (last visited 04-08-18)
[2] https://www.experian.com/marketing-services/targeting/data-driven-marketing.html (last visited 04-08-18)

wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct)." on that same web page.

**ANSWER:**  Trans Union states that the document identified as Exhibit 4 speaks for itself. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

6.    Defendant Equifax, Inc. (Equifax) along with its subsidiaries operates as a Consumer Reporting Agency ("CRA") regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq*. with Equifax Inc. corporate offices at 1550 Peachtree Street, Atlanta, GA 30309.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

7.    Equifax, Inc. is the parent of Equifax Information Services, LLC (EIS).  In prior litigation it has taken the position it is not itself a "consumer reporting agency" governed by the FCRA.  See 15 U.S.C. § 1681a(f).  ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.")

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

8.      But of course, Equifax, Inc. *is* a consumer reporting agency.  For purposes of the FCRA Equifax, Inc. has held itself out repeatedly to consumers, regulators and the public generally as the actual operating entity.  Even the United States Congress recognizes Equifax, Inc. as a consumer reporting agency as evidenced by a recent letter to it from the Committee on Oversight and Government Reform, see Exhibit 5.

**ANSWER:**  Trans Union states that the document identified as Exhibit 5 speaks for itself. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

9.      The copyright on the Defendants' consumer website plainly states "Copyright 2018 Equifax, Inc."[3], (also see EXHIBIT 4, in the small print at the bottom of pgs. 2 and 5).  Why doesn't EIS own the copyright of this website that deals with information contained in the consumers file if the only corporate entity that deals with consumer file information is EIS. Despite the website being plastered with the Equifax logo the only corporate entity to tie the website to is Equifax, Inc. there was even a place on their website selling "Equifax Credit Report and Score" services[4] (also see Exhibit 4 near the bottom of pg.2) you'd expect to see EIS's name, somewhere right? Wrong, all I found was Equifax, INC at the bottom of the page as the owner of the website "Copyright 2018 Equifax All rights reserved Equifax and the Equifax marks used herein are trademarks of Equifax, INC" [Exhibit 4] Instead Equifax INC. owns the copyright of this website, would that not in itself not put Equifax, INC in the business of a CRA by the plan language of FCRA 15 U.S.C. § 1681a(f) "....consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part

---

[3] https://www.equifax.com/personal/ (last visited on 04-08-18)
[4] https://www.equifax.com/personal/products/credit/report-and-score/ (last visited on 04/08/18)

in the practice... uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." Defendants have in many cases held Equifax, Inc. out as the operating and responsible entity but argue in litigation that EIS is the consumer reporting agency not Equifax, Inc.  How a company factually operates is what matters under the FCRA not how it says it operates.  It appears that Bloomberg.com agree with the U.S Congress and Mr. Spencer in regard to what Equifax, Inc.[5] is On Bloomberg.com, a highly respected news organization, they describe the Defendant operations as follows: "Equifax Inc. brings buyers and sellers together through its information management, transaction processing, direct marketing, and customer relationship management businesses.  The Company serves the financial services, retail, credit card, telecommunications, utilities, transportation, information technology, and healthcare industries and government."

**ANSWER:**  Trans Union states that the document identified as Exhibit 4 speaks for itself. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

10.     Equifax, Inc. and its subsidiaries such as Equifax Information Services LLC (EIS) and Equifax Consumer Services, LLC (ECS) operate as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

---

[5] https://www.bloomberg.com/quote/EFX:US (Last visited on 04/08/18)

Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

11.     Equifax, Inc. and its subsidiaries including EIS operate using the same "Equifax" logo with no differentiation between entities when interacting with consumers via mail and otherwise.  By virtue of different subsidiaries and divisions operating without any impediments of corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one Equifax entity from another.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

12.     Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities.   The business operations are fully coordinated, and shared resources are cross-applied without full and complete profit and cost centers.  Management decisions at EIS and ECS as well as other divisions are made by and through Equifax, Inc. And the entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files.  Its customer base is vast including state and federal governments generating hundreds of millions if not billions of dollars in revenue annually.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

13.     The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer reporting agency from circumventing or evading treatment as a nationwide consumer reporting agency" by means of corporate organization or restructuring.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

14.     Equifax, Inc. and its subsidiaries - whether or not they observe state law corporate formalities - have eliminated nearly all lines between their different business entities in the collection, maintenance, sharing and furnishing of consumer reporting information.  Equifax, Inc. entities such as EIS regularly share FCRA restricted information with sibling ECS to market and profit from the sale of identity theft products including the blurring of legal lines between providing file information under the FCRA versus private sale to the consumer.  It does so with a number of Equifax related entities such as TALX Corporation, eThority, Anakam, Inc. not to mention Equifax Mortgage Services.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

15.     To remain separate and distinct for purposes of liability in this action, Defendants Equifax, Inc. and Equifax Information Services, LLC *must operate* as separate and legally as well as operationally distinct entities.  Here for matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc.  For purposes of how consumer data was handled, warehoused, used and sold the corporate lines were disregarded in practice.  EIS, ECS and other subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the corporate consumer credit business.

Equifax, Inc., EIS, ECS and other subsidiaries share full unity of interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

16.    Defendant Trans Union, LLC (Trans Union) along with its subsidiaries and affiliates operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq*. with corporate offices at 555 W. Adams Street Chicago, IL 60661.  Trans Union operates as a single FCRA governed consumer reporting agency. Trans Union, LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities, However, it freely transfers data between units and operates without any impediments of corporate structure for example within its "suite of products" is Prama Data Extract[6] (also see Exhibit 4) which allows the user to "Query TransUnion depersonalized, archive credit data via self-service, on-demand, point-and-click access. Query against %100 of depersonalized TransUnion credit data..." suggesting that TransUnion may have an archive of personalized data that Plaintiff has the right to see according to 15 U.S.C. § 1681g(a)(l).  I also found on their own website where they boast[7] "TransUnion's suite of mission-critical solutions provides the public sector with vital information and an unmatched combination of credit and non-credit data…"  Further on in this shocking document they go on to say that their services have the

---

[6] https://www.transunion.com/product/prama-datahub (Last visited 04/08018)
[7] https://www.transunion.com/industrv/government (last visited 04/08/18)

ability to "…Quickly identify and assess behavioral changes of individuals before a serious threat situation occurs." What data are they using for this service? What if this data was incorrect, and you are being labeled as an "insider threat" without your knowledge or ability to dispute the incorrect information because you have no idea what that information is because the defendant refuses to comply with 15 U.S.C. § 1681g(a)(l), is it possible that this hidden information could have a negative impact on a consumer and in some cases shade the consumer in a negative light completely unbeknownst to him? In almost every material regard, the Trans Union units/suites *operate* as if they are one and the same, a single consumer reporting agency.

**ANSWER:**  Trans Union states that the document identified as Exhibit 4 speaks for itself. Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*  Trans Union admits that it is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Trans Union denies the allegation that "[Trans Union] refuses to comply with 15 U.S.C. § 1681g(a)(1)."  As Plaintiff's remaining allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

## VENUE

17.    The occurrences which give rise to this action occurred in Kalamazoo County, Michigan and Plaintiff resides in Kalamazoo County, Michigan.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

18.    Venue is proper in the Western District of Michigan.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## GENERAL ALLEGATIONS

19.     Plaintiff wanted to obtain his full consumer file disclosure to obtain all information recorded and maintained in Defendants' files and/or databases about him as 15 U.S.C. § 1681g(a)(l) states he is entitled to.  Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(l) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.  15 U.S.C. § 1681g(a)(l).  Plaintiff looked at the annualcreditreport.com website which was set up and is operated by the Defendants but could find no place on that website where he could request his full consumer file disclosure.  Instead he found only where he could request a "credit report" which is NOT what he wanted or what § 1681g(a)(l) states he is entitled to upon request as a consumer.  Plaintiff then decided to write to each of the Defendants directly and made a very deliberate and specific request to obtain his full consumer file disclosure which he is entitled to under 15 U.S.C. § 1681g(a)(l), NOT just a conventional credit report.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

20.     Plaintiff made a written request sent by certified mail for a copy of his full consumer file disclosure which was received by Experian on September 22, 2017.  See Exhibit 1.

**ANSWER:**  Trans Union states that the document identified as Exhibit 1 speaks for itself. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

21.    In response to his very specific request for his full consumer file disclosure Plaintiff received a credit report which was only about 12 pgs. and a letter describing the process of filing a dispute about information in the credit report.  See Exhibit 3, which was not responsive to his request.

**ANSWER:**  Trans Union states that the document identified as Exhibit 3 speaks for itself. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

22.    Plaintiff made a written request sent by certified mail for a copy of his full consumer file disclosure which was received by Equifax on September 24, 2017.  See Exhibit 1.

**ANSWER:**  Trans Union states that the document identified as Exhibit 1 speaks for itself. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

23.    In response to his very specific request for his full consumer file disclosure Plaintiff received a letter explaining how to initiate an investigation of information contained in the credit report See Exhibit 3.  The letter states "Thank you for requesting your credit file, commonly called a Consumer Credit Report....." although this letter does provide the contact information for Equifax Information Services LLC, it was provided in the context of initiating an investigation on items in his credit report not providing the plaintiff with his full consumer file disclosure which is what he was clearly requesting.  A credit report was also included in this correspondence and was only about 16 pgs., which was not responsive to his request for a Full Consumer File Disclosure.

**ANSWER:**  Trans Union states that the document identified as Exhibit 3 speaks for itself. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

24.     Plaintiff made a written request sent by certified mail for a copy of his full consumer file disclosure which was received by Trans Union on September 25, 2017.  See Exhibit 1 attached.

**ANSWER:**  Trans Union states that the document identified as Exhibit 1 speaks for itself. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

25.     In response to his very specific request for his full consumer file disclosure Plaintiff received a letter which starts off "Enclosed is the TransUnion Personal Credit Report that you requested..." See Exhibit 3 and a credit report which was only 5pgs. which was NOT responsive to his request.

**ANSWER:**  Trans Union states that the document identified as Exhibit 3 speaks for itself. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

26.     Plaintiff, in making the exact same request of each of the Defendants, specified in great detail exactly what specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a full consumer file disclosure at least once every 12 months at no charge when a request is made by a consumer.  See Exhibit 1.

**ANSWER:**  Trans Union states that the document identified as Exhibit 1 speaks for itself. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient

to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

27.     Plaintiff's request for a full consumer file disclosure from each Defendant was his first request for a full consumer file disclosure within 12 months and identification in the form of a legible copy of his social security card and Michigan driver's license was attached to the request for identification and location purposes.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

28.     After receiving a response from each Defendant that did not comply with the request made, Plaintiff made a second and final written request for a full consumer file disclosure for ALL the information in his file pursuant to the FCRA of each Defendant [Exhibit 2].  A copy or identical copy of the initial letter was sent with the second request for clarification along with identification in the form of a legible copy of Plaintiff's social security card and Michigan driver's license for identification.

**ANSWER:**  Trans Union states that the document identified as Exhibit 2 speaks for itself. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

29.     At no time did Plaintiff make any request for a personal credit report/disclosure or credit file/consumer credit report nor did plaintiff request information about how to dispute information within these documents from the Defendants but instead was very specific in requesting a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(l) as outlined in the initial request.  [Exhibit 1]

**ANSWER:**  Trans Union states that the document identified as Exhibit 1 speaks for itself. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

30.     In response to Plaintiff's second request for a full consumer file disclosure to Experian he received a credit report clearly stating "...we're pleased to send you this credit report..." which was 12 pgs. Long [sic] and was not responsive to his request as required by 15 U.S.C. § 1681g(a)(l).

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

31.     In response to Plaintiff's second request for a full consumer file disclosure to Equifax he received a letter stating in part he was not eligible for a free copy of his credit file and "....in addition to the Annual Free copy which is requested through the Central Source as well as through Equifax.  A reasonable processing fee (currently $11.50) may be charged..."  See Exhibit 3 which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(l).

**ANSWER:** Trans Union states that the document identified as Exhibit 3 speaks for itself. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

32.     In response to Plaintiff's second request for a full consumer file disclosure to Trans Union he received nothing which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(l).

**ANSWER:** Trans Union denies the allegations contained in this paragraph.

33.     All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

34.     15 U.S.C. § 1681g(a)(l) requires that ALL information in the possession of a CRA at the time of a consumer's proper request be disclosed in response to that request.  Nowhere in §1681g does the statute limit that information to the scope of credit or credit related data which may be included in a conventional credit report.  The statute clearly states ALL information regardless of its nature must be provided other than clearly ancillary information excluded by § 1681g(l)(B) which Plaintiff clearly did NOT request [Exhibits 1,2].  The defendants attempt to obfuscate the facts by using terminology other than the plain language of the statute to describe

what is required to be provided to Mr. Spencer upon his requests which were very simple, and straight forward.

**ANSWER:**  Trans Union states that the documents identified as Exhibits 1 and 2 speak for themselves.  Trans Union denies the allegation that "[t]he defendants attempt to obfuscate the facts by using terminology other than the plain language of the statute to describe what is required to be provided to Mr. Spencer upon his requests which were very simple, and straight forward" as it applies to Trans Union.  Trans Union denies that these same allegations require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

35.    In each case with each Defendant there was only communication in the form of letters requesting Plaintiff's full consumer file disclosure and response(s) by each Defendant with no other party involved in the communications between the parties other than the United States Postal Service (USPS) which transported documents between the parties.

**ANSWER:**    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

36.    Plaintiff was aware of the recent hack of the Equifax database and had reason to believe that more information than he had ever received in a conventional credit report in the past had been stolen just from the massive publicity surrounding the hack and his study of the consumer protection statutes including the FCRA.  He had been studying the FCRA prior to the hack and

already realized there was substantial information that companies like Equifax, Experian and Trans Union had in their file(s) about consumers than had been included in a conventional credit report he had received previously.

**ANSWER:**  As Plaintiff's allegations are stated and, absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

37.     Plaintiff had requested and received a full consumer file disclosure from LexisNexis in January 2018 that contained about 86 pgs. of consumer information including 10 individual reports.  See Exhibit 6.  <u>allot [sic] of the information about the plaintiff in some of these reports were sourced from Equifax dating back to 1990</u>.  LexisNexis referred to the documents produced as Plaintiff's "Full File Disclosure."  To my surprise some of the information sourced from Equifax was never included in a conventional credit report that the plaintiff had received from the defendant in the past.  There was a huge disparity between the number of pages of the consumer information provided by each of the Defendants <u>in response to the same request made to LexisNexis.</u>

**ANSWER:**  Trans Union states that the document identified as Exhibit 6 speaks for itself. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient

to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

38.    With substantial information shown in the lexisNexis [sic] Full File Disclosure with much of it not only being sourced from Equifax but not being present in the credit reports that they had provided the plaintiff [sic] in the past it was reasonable for the Plaintiff to deduce that information required to have been disclosed by the defendants had not been.  How could the Defendants be "the big three" in the consumer reporting business with so little information about Mr. Spencer in their files in comparison to what LexisNexis had?  That just doesn't make sense. Why did Equifax provide LexisNexis with Plaintiff's personal information and then turn around and withhold that very same information from him when he requested his full consumer file disclosure.

**ANSWER:**    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

39.    It was obvious to the Plaintiff that information was being withheld by the Defendants rather than being disclosed as required by the FCRA.  "Every consumer reporting agency shall, upon request, and subject to 15 U.S.C. § 1681g(a)(l) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(l) (emphasis added).  Defendants have deliberately, intentionally and in violation of the law refused to provide all information in their file(s)/databases that relates directly to Mr. Spencer.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.   Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

40.    LexisNexis is a consumer reporting agency as well and is governed by the FCRA just as the Defendants are.   Plaintiff had no direct knowledge of specific information regarding himself that was in the defendants file(s) but had very good reason to believe there was substantial consumer information based on the Lexis Nexis full file disclosure and publicity surrounding the Equifax hack.   That information, if it existed, could only be obtained through requesting a full consumer file disclosure from the defendants pursuant to 15 U.S.C. § 1681g(a)(l) as he had from LexisNexis rather than asking for a conventional credit report as he had in the past through annualcreditreport.com.

**ANSWER:** As Plaintiff's allegations are stated and, absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

41.    Upon information and belief Defendants have far more information relating to Plaintiff in their file(s) and/or database(s) including archived information and additional information that is provided to prospective creditors, insures, employers and other third parties beyond that which Plaintiff has ever had access to or had the opportunity to review for accuracy and is provided to others when they make a request for consumer information related to him, as

referenced earlier with Equifax providing information to LexisNexis but withholding it from Plaintiff even after a lawful request for the information was made.

**ANSWER:**    Trans Union denies the allegations of this paragraph as they apply to Trans Union.    Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

42.    Upon information and belief, the information that is not disclosed to the Plaintiff may contain negative codes or erroneous account information, among other things, that is provided to prospective creditors, insures or employers which directly impacts how that prospective creditor, insurer, or employer would view Plaintiff in terms of granting credit, rating insurance policies or providing employment or even housing.

**ANSWER:**    Trans Union denies the allegations of this paragraph as they apply to Trans Union.    Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

43.    This undisclosed information has never been provided to Plaintiff even when it was properly requested so he could examine it for accuracy and dispute if necessary.    It could be blatantly false or at least misleading and without disclosure by the Defendants.    Plaintiff would not have the opportunity to dispute the accuracy or the voracity of the information in the Defendants files which he is legally entitled to do under the FCRA.    Disclosure of false or misleading information to other parties such as prospective creditors, insurers or employers that Plaintiff knows nothing about could paint him in a false light where he could be denied credit, housing, employment or pay higher interest rates on credit if it were granted and higher premiums

for insurance harming him substantially.  The bottom line is the Plaintiff is entitled to that information after a proper request is made and it was not provided by the defendants.

**ANSWER:**  Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

44.     The Defendants have repeatedly refused to provide Plaintiff with his full consumer file disclosure after multiple requests.  Plaintiff's requests were very specific in nature so as not to be misconstrued as a request for a credit report, credit disclosure or some other thing by the defendants.  Defendants attempt to obfuscate the requests using terminology such as "disclosure, credit and report" in various forms and in doing so did not respond properly as required by law to Plaintiff's very simple, deliberate and legal requests.

**ANSWER:**  Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

45.     Plaintiff never made any request of the Defendants that used the words "credit" or "report" in any manner or context but made a straightforward, deliberate and very clear request ONLY for a full consumer file disclosure [Exhibits 1,2] to which he is entitled to under 15 U.S.C. § 1681g(a)(l) and all Defendants failed to provide Plaintiff with ALL information in their file(s) at the time of the request as required by the FCRA.

**ANSWER:** Trans Union states that the documents identified as Exhibits 1 and 2 speak for themselves.  Trans Union denies the remaining allegations of this paragraph as they apply to

Trans Union.   Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

46.    Plaintiff clearly is not making any claim regarding information that HAS been provided to a third party that he is aware of.  The sole issue in this lawsuit revolves around the fact that he has not had access to ALL information in his full consumer file that may have been at some time in the past provided to an unknown third party or MIGHT be provided at some time in the future to a third party and he is entitled to have access to by law to review for accuracy.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.   Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

47.    Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers.  The ONLY information requested by Plaintiff was a full consumer file disclosure of information ***directly*** related to him as a consumer that affects his credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

48.     Because Plaintiff has not had access to that undisclosed information he has therefore had no opportunity to review it and dispute the accuracy of it if it is false, yet it is provided to potential creditors, housing providers, insurers and employers without his knowledge and purposely and illegally concealed from him.   Plaintiff has the right to his full consumer file disclosure By Law [sic] when it is properly requested which was clearly the case here and all Defendants failed to comply with Plaintiff's multiple lawful requests.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union.   Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

49.     Upon information and belief when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be shown that information.   There is no prohibition in the law that information obtained by a user can be provided to the consumer if a request for it is made by the consumer yet instructions from the Defendants are to the contrary. Why?

**ANSWER:** As Plaintiff's allegations are stated and, absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

50.     One can only surmise that there must be some nefarious reason why that information should not be provided to the consumer that is sent to the user in an encrypted format with instructions to the user to conceal it from the consumer.  A reasonable assumption would be that it contains information that the consumer has never seen and the consumer reporting agencies don't want the consumer to see for some unknown reason.  This is obviously not in concert with the mandate of full disclosure clearly articulated in the FCRA in unambiguous plain language.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union.   Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

51.     Plaintiff made multiple specific written requests of each of the Defendants for **a** full consumer file disclosure to which he is entitled as clearly stated in 15 U.S.C. § 1681g(a)(l) and all Defendants have failed to provide his full consumer file disclosure to Plaintiff and are therefore in violation of the FCRA.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union.   Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

52.     The claims made in this lawsuit are in NO manner related to the data breach that occurred with Equifax.  The claims herein are entirely focused on the very simple premise that all Defendants failed to provide a full consumer file disclosure of all information in their files to Plaintiff upon his multiple requests as required by 15 U.S.C. § 1681g(a)(l).  There is no relation of any claims made herein to any issues with the Equifax data breach.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

53. The actions of all Defendants occurred within the past 2 years and are within the Statute of Limitations under the FCRA.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## COUNT I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

54. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

**ANSWER:** Trans Union reasserts its answers and responses set forth herein.

55. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

56. Experian operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

57. Experian repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(l).

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

WHEREFORE, Plaintiff demands judgment for damages against Experian for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.  Together with other and further relief as the court may deem reasonable and just under the circumstances.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT II

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

58.    Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

**ANSWER:**  Trans Union reasserts its answers and responses set forth herein.

59.    Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

60.    Trans Union operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

**ANSWER:**  Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

61.    Trans Union repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(l).

**ANSWER:**  Trans Union denies the allegations contained in this paragraph.

WHEREFORE, Plaintiff demands judgment for damages against Trans Union for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.  Together with other and further relief as the court may deem reasonable and just under the circumstances

**ANSWER:**  Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## COUNT III

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES, LLC

62.     Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

**ANSWER:**  Trans Union reasserts its answers and responses set forth herein.

63.     Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

64.     Equifax and its alter ego Equifax Information Services, LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

65.     Equifax and Equifax Information Services, LLC repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(l).

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Inc. and Equifax Information Services, LLC for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.  Together with other and further relief as the court may deem reasonable and just under the circumstances.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union.

## AFFIRMATIVE DEFENSES

1.      Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.  Here, the only information Plaintiff alleges that Trans Union wrongly failed to disclose to him consists of  "obsolete and archived information" that was included in previous reports and "negative codes … that are provided to prospective creditors, insurers or employers which [sic] directly impacts how that prospective creditor, insurer or employer would view the Plaintiff …."  See Complaint ¶ 36 and Exhibits 1-2.  Contrary to such allegations, Section 1681g(a) of the FCRA only requires a consumer reporting agency to disclose "information in the consumer's file <u>at the time of the request</u>" and expressly excludes "any information concerning credit scores or any other risk scores or predictors relating to the consumer."  See 15 U.S.C. § 1681g(a)(1) (emphasis added).

Moreover, Section 1681c of the FCRA expressly prohibits a consumer reporting agency from including obsolete information in a consumer report.[8] See id. § 1681c(a).

2.    Trans Union's reports concerning Plaintiff were true or substantially true. Here, Plaintiff alleges that Trans Union provided "undisclosed information" to "prospective creditors, insurers and employers," which "could be blatantly false or at the least misleading," but has not identified any specific inaccuracy in Trans Union's reporting, as required.[9] See, e.g., Complaint ¶¶ 43, 48; see also Nelski v. Trans Union, LLC, 86 F. App'x 840, 844 (6th Cir. 2004) ("In order to assert a claim under § 1681e(b), a plaintiff must prove; (1) the defendant reported inaccurate information about the plaintiff . . .").

3.    Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff. Here, Plaintiff alleges that Trans Union provided "undisclosed information" to "prospective creditors, insurers or employers," which "could be blatantly false or at the least misleading," but has not and cannot demonstrate, as required, that Trans Union failed to follow reasonable procedures to ensure the accuracy of any information that Trans Union reported concerning Plaintiff. See, e.g., Complaint ¶¶ 43, 48; see also Nelski, 8 F. App'x at 844 (in addition to alleging an inaccuracy in Trans Union's reporting, Plaintiff must demonstrate that "the defendant either negligently or willfully failed to follow

---

[8] Federal courts and the Federal Trade Commission ("FTC") – the federal agency formerly charged with enforcing and interpreting the FCRA – have limited the scope of the term "file" in Section 1681g to such information that would be disclosed in a consumer report to a third party. See, e.g., Gillespie v. Trans Union Corp., 482 F.3d 907, 910 (7th Cir. 2007) ("The language of § 1681g(a)(1), the FTC's interpretive guideline, and the Senate Committee Report all support Trans Union's argument that 'file' means information included in a consumer report."). Although interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010, the CFPB has not issued any contrary interpretation.

[9] Although Plaintiff has not specifically identified Section 1681e(b) in his Complaint, Plaintiff has alleged that the information in his Trans Union credit file "could be blatantly false" and district courts are required "to read a *pro se* plaintiff's complaint indulgently and liberally." See Complaint ¶ 43; see also Terrell v. Berghuis, No. 4:05-cv-108, 2009 U.S. Dist. LEXIS 44588, at *12 (W.D. Mich. May 27, 2009).

reasonable procedures to assure maximum possible accuracy of the information about the plaintiff . . . ").

4.      Plaintiff has failed to take reasonable steps to mitigate his damages, if any.  Here, Plaintiff seeks actual damages against Trans Union pursuant to Section 1681n of the FCRA, which expressly allows for recovery of actual damages.  See Complaint at 22; see also 15 U.S.C. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1)(A) any actual damages sustained by the consumer as a result of the failure or damages . . ."). Case law holds that a plaintiff's failure to mitigate is relevant to a claim for actual damages.  See, e.g., Glover v. Mary Jane M. Elliott, P.C., No. 1:07-cv-648, 2007 U.S. Dist. LEXIS 73605, at *8 (W.D. Mich. Oct. 2, 2007) (denying plaintiff's motion to strike where "the two state statutes pleaded by plaintiff each allow an award of actual damages" and noting that "the facts supporting the defense are generally within the control of plaintiff. A defendant should therefore be given a reasonable opportunity to conduct discovery before being put to the task of supporting this defense with proof").

5.      Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.  Here, Plaintiff alleges that Trans Union provided "undisclosed information" to "prospective creditors, insurers or employers," which "could be blatantly false or at least misleading," but such reporting was likely the result of information provided to Trans Union by Plaintiff's creditors, who have an independent obligation under the FCRA to ensure accurate reporting.  See, e.g., Complaint ¶¶ 43, 48; see also 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any

consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.").

6.      Any claim for exemplary or punitive damages asserted by Plaintiff violates Trans Union's rights under the Due Process and Excessive Fines clauses of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the analogous provisions of applicable State Constitutions and under the First Amendment of the United States Constitution and the analogous provisions of applicable State Constitutions.  Here, Plaintiff seeks damages and costs against Trans Union pursuant to Section 1681n of the FCRA, which expressly allows for recovery of punitive damages.  See Complaint at 22; see also 15 U.S.C. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of … (2) such amount of punitive damages as the court may allow . . .").  It is well settled that few punitive damage awards "exceeding a single digit ratio between punitive and compensatory damages . . . will satisfy due process."  See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (U.S. 2003). Plaintiff has not pled the amount of compensatory and punitive damages that are sought, which could "exceed[] a single digit ratio between punitive and compensatory damages" in violation of Trans Union's constitutional rights.

WHEREFORE, Defendant Trans Union, LLC, by counsel, denies that Plaintiff is entitled to judgment or to any of the relief sought, and respectfully requests that judgment be entered in its favor and against Plaintiff on all counts set forth in the Complaint, and that Trans Union, LLC, be awarded its costs incurred in defending this action, along with such other relief as this Court deems equitable and just.

Respectfully submitted,

Date: April 30, 2018      /s/ Scott E. Brady
Sandra Davis Jansen, Esq. (IN #27803-53)
Scott E. Brady, Esq.  (IN #30534-49)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  sjansen@schuckitlaw.com
E-Mail:  sbrady@schuckitlaw.com

*Counsel for Defendant Trans Union, LLC*