## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### (Southern Division)

---

**NATHANIEL SPENCER, III,**

    **Plaintiff,**

**v.**

**EXPERIAN INFORMATION
SOLUTIONS INC., et al.,**

    **Defendant.**

**Civil Action No. 1:18-cv-00194-PLM-
PJG**

**Judge Paul L. Maloney
Magistrate Judge Phillip J. Green**

---

NATHANIEL SPENCER, III
2711 CHAPARRAL ST.
KALAMAZOO, MI 49006
(269) 599-7808
*PRO SE*

KING & SPALDING LLP
Kendall W. Carter
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404-572-2495
Fax: 404-572-5100
Email: kcarter@kslaw.com
*Attorneys for Equifax Inc.*

---

## DEFENDANTS EQUIFAX INC.'S AND
## EQUIFAX INFORMATION SERVICES LLC'S BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................1

**STANDARD OF REVIEW** .................................................................2

**ARGUMENT** .......................................................................................4

    **I.**    **Equifax Inc. Is Not a Consumer Reporting Agency And, Therefore, Should Be Dismissed.** .......................................4

    **II.**    **Mr. Spencer's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.** ...........................14

        A.    "Consumer file" is defined as the information contained in a consumer's credit report/disclosure. ......................................15

        B.    Mr. Spencer admits he received a copy of his credit report/disclosure from Equifax. ................................................16

        C.    Mr. Spencer provides no factual basis for his assertion that the "credit report" he received was not his "full consumer file disclosure." ........................................................................17

**CONCLUSION**....................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aioi Seiki, Inc. v. JIT Automation, Inc.*,
    11 F. Supp. 2d 950 (E.D. Mich., 1998) ............................................................10

*Albrecht v. Treon*,
    617 F.3d 890 (6th Cir. 2010) ...................................................................3, 4

*Antioch Litig. Trust v. McDermott Will & Emery LLP*,
    738 F. Supp. 2d 758 (S.D. Ohio 2010) ..............................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................3, 18

*People ex rel. Attorney General v. Mich. Bell Tel. Co.*,
    246 Mich. 198, 224 N.W. 438 (1929)................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................2, 3, 18

*Brown Bros. Equip. Co. v. State Hwy. Comm.*,
    51 Mich. App. 448, 215 N.W.2d 591 (1974).......................................................11

*Bruun v. Cook*,
    280 Mich. 484, 273 N.W. 774 (1937)................................................................9

*Casias v. Wal-Mart Stores, Inc.*,
    695 F.3d 428 (6th Cir. 2012) ................................................................3

*Cassidy v. Teaching Co., LLC*,
    No. 2:13-CV-884, 2014 WL 1599518 (S.D. Ohio Apr. 21, 2014)....................18

*Channing v. Equifax, Inc.*, .,
    No. 5:11-CV-293-FL, 2013 WL 593942 (E.D.N.C. Feb. 15, 2013)..........6, 9, 13

*Erickson v. Pardus*,
    551 U.S. 89 (2007)................................................................................3

iii

*Foodland Distrib. v. Al–Naimi*,
    220 Mich. App. 453, 559 N.W.2d 379 (1996)......................................................12

*Frihat v. Citimortgage, Inc.*,
    No. 07-CV-946, Doc. 60 (W.D. Mo. Dec. 1, 2009) .......................................7, 13

*Gledhill v. Fisher & Co.*,
    272 Mich. 353, 262 N.W. 371 (1935)...............................................10, 11, 12, 13

*Gottlieb v. Arrow Door Co.*,
    364 Mich. 450, 110 N.W.2d 767 (1961)...........................................................11

*Greear v. Equifax, Inc.*,
    No. 13-11896, 2014 WL 1378777 (E.D. Mich. Apr. 8, 2014) ..................5, 6, 13

*Haines v. Kerner*,
    404 U.S. 519 (1972)...........................................................................................3

*Jourdan v. Jabe*,
    951 F.2d 108 (6th Cir. 1991) .............................................................................3

*Klager v. Robert Meyer Co.*,
    415 Mich. 402, 329 N.W.2d 721 (1982).......................................................11, 13

*Kline v. Kline*,
    104 Mich. App. 700, 305 N.W.2d 297 (1981)...................................................12

*Kline v. Mortg. Elec. Registration Sys., Inc.*,
    No. 3:08cv408, 2011 WL 1233642 (S.D. Ohio Mar. 29, 2011)........................18

*Lewis v. Taylor*,
    No. 1:10–CV–00108, 2010 WL 3875109 (S.D. Ohio Sept. 21,
    2010) ..................................................................................................................19

*Maki v. Copper Range Co.*,
    121 Mich. App. 518, 328 N.W.2d 430 (1982)...................................................10

*McDonald v. Equifax Inc.*,
    No. 3:15-CV-3212-B, 2017 WL 879224 (N.D. Tex. Mar. 6, 2017) .............6, 13

*Moran v. The Screening Pros, LLC*,
    9th Cir. Cause No. 12-57246 10/4/13, Dkt. 22...................................................15

*Persson v. Equifax Inc.*,
  No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) ...................................7, 13

*Pettway v. Equifax Info. Servs., LLC*,
  No. CIV.A. 08-0618-KD-M, 2010 WL 653708 (S.D. Ala. Feb. 17,
  2010) ........................................................................................................16

*Price's Collision Ctr., LLC v. Progressive Haw. Ins. Corp.*,
  2013 WL 5782926 (M.D. Tenn. Oct. 28, 2013)..................................................18

*Ransom v. Equifax Inc.*,
  No. 09-80280-CIV, 2010 WL 1258084 (S.D. Fla. Mar. 30, 2010)...............6, 13

*Slice v. Choicedata Consumer Servs., Inc.*,
  No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005)...............6, 13

*In re RCS Engineered Prod. Co., Inc.*,
  102 F.3d 223 (6th Cir. 1996) ...........................................................................10

*Rymal v. Baergen*,
  262 Mich. App. 274, 686 N.W.2d 241 (2004)....................................................11

*Seasword v. Hilti, Inc. (After Remand)*,
  449 Mich. 542, 537 N.W.2d 221 (1995).........................................................9, 11

*Slice v. Choicedata Consumer Servs., Inc.*,
  No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005)...............6, 13

*Soloman v. Western Hills Dev. Co. (After Remand)*,
  110 Mich. App. 257, 312 N.W.2d 428 (1981)....................................................12

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue
  Shield*,
  552 F.3d 430 (6th Cir. 2008) ..............................................................................3

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of
  Educ.*,
  615 F.3d 622 (6th Cir. 2010) ..............................................................................3

*Wantz v. Experian Info. Solutions*,
  386 F.3d 829 (7th Cir. 2004) .............................................................................16

*Weiler v. Equifax Inc.*,
  No. 2:99-CV-936, Doc. 29 (W.D. Pa. Nov. 16, 2000) ...............................7, 8, 13

*Wells v. Firestone Tire & Rubber Co.*,
    421 Mich. 641, 364 N.W.2d 670 (1985).................................................................9

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .....................................*passim*

15 U.S.C. § 1681a(d) ...................................................................................................4

15 U.S.C. § 1681a(f) ....................................................................................................4

15 U.S.C. § 1681g........................................................................................*passim*

15 U.S.C. § 1681n........................................................................................................8

Consumer Financial Protection Act of 2010.............................................................15

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ....................................................................2

Federal Rule of Civil Procedure 12(b)(6) .......................................................*passim*

"40 Years of Experience with the Fair Credit Reporting Act – An FTC
    Staff Report with Summary of Interpretations" ("40 Years
    Commentary") (available at
    https://www.ftc.gov/sites/default/files/documents/reports/40-years-
    experience-fair-credit-reporting-act-ftc-staff-report-summary-
    interpretations/110720fcrareport.pdf).................................................................15

Defendants, Equifax Inc. and Equifax Information Services LLC ("EIS"), by counsel, file their Brief in Support of their Motion to Dismiss Plaintiff Nathaniel Spencer, III's First Amended Complaint for Violations of the FCRA ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and asks the Court to dismiss this action with prejudice in its entirety. For the reasons stated below, the motion should be granted.

## INTRODUCTION

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. *Pro se* Plaintiff Nathaniel Spencer, III filed his Complaint for Violations of the FCRA against Experian Information Solutions, Inc., Trans Union, LLC, and Equifax, Inc. (ECF No. 1). Equifax Inc. filed a motion to dismiss for failure to state a claim. (ECF No. 10). Mr. Spencer subsequently sought leave to file his FAC, (ECF No. 22), the Court granted leave for him to file his FAC and deemed the FAC, (ECF No. 16), filed instanter, (ECF No. 18). In his FAC, Mr. Spencer alleges that Equifax Inc. and EIS violated the FCRA by failing to provide him with a consumer disclosure pursuant to 15 U.S.C. § 1681g. (ECF No. 16 ¶ 65).

Equifax Inc. moves this Court to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) as it is not a consumer reporting agency; thus, it cannot be liable under the FCRA. EIS is a consumer reporting agency, and it is the party that responded to Mr. Spencer's two written requests. Equifax Inc. and EIS also jointly

1

move to dismiss the FAC as Mr. Spencer fails to allege facts sufficient to support a claim for relief. He repeats the statutory language and offers merely speculative and conclusory allegations that he received a "credit report" when he requested a "full consumer file disclosure." Mr. Spencer's allegations do not adequately state a claim and fail to provide Equifax Inc. and EIS with adequate notice of the basis of the claims asserted against it. Accordingly, Mr. Spencer's FAC should be dismissed with prejudice.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not require "detailed" factual allegations, it does require more than labels and the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the

plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Courts are not required to conjure up unpleaded allegations, nor accept unwarranted factual inferences. *See Total Benefits Planning*, 552 F.3d at 434. "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even the lenient treatment generally given *pro se* pleadings has its limits, however. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "A plaintiff must 'plead [ ] factual content that allows the court

3

to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678). "A plaintiff falls short if [ ] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

## <u>ARGUMENT</u>

**I.**      **Equifax Inc. Is Not a Consumer Reporting Agency And, Therefore, Should Be Dismissed.**

A "consumer reporting agency" or "CRA" is defined by the FCRA, 15 U.S.C. § 1681a(f) as:

> any person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

The term "consumer report" is defined by 15 U.S.C. § 1681a(d) as:

> The term "consumer report" means any written, oral, or other communication of any information by a *consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance … . (Emphasis added.)

Therefore, in order to be held liable under the FCRA, a defendant must be a "consumer reporting agency" that prepared a "consumer report" concerning the plaintiff.

Equifax Inc. is not a consumer reporting agency; therefore, federal courts consistently dismiss Equifax Inc. in FCRA lawsuits filed by consumers based on allegations similar to those made by Mr. Spencer here. Federal courts consistently have held that, based on the plain language of the FCRA, plaintiffs cannot maintain FCRA claims against Equifax Inc., and that Equifax Inc. may not be held liable under the FCRA for actions taken by its subsidiaries. *See e.g.*, *Greear v. Equifax, Inc.*, No. 13-11896, 2014 WL 1378777, at *1 (E.D. Mich. Apr. 8, 2014) (dismissing plaintiff's claims because "Defendant Equifax, Inc., is not a consumer reporting agency subject to the requirements of the FCRA. Plaintiff cannot, as a matter of law, state a claim against Equifax, Inc., under the FCRA."). The District Court for the Eastern District of North Carolina stated as follows:

> ("[P]laintiff has simply sued the wrong party; . . . [Equifax Inc.,] which is incorporated and headquartered in Georgia, is a holding company with no source of income other than what it obtains from its ownership interests in subsidiaries and affiliates. It has not been in the business of assembling or evaluating consumer credit information since 1977. Thus, insofar as plaintiff has alleged a claim against defendant for violating the FCRA, summary judgment for defendant is appropriate where it is not a CRA and not subject to the requirements of the FCRA.

*Channing v. Equifax, Inc.*, ., No. 5:11-CV-293-FL, 2013 WL 593942, at * 2 (E.D.N.C. Feb. 15, 2013) (citations omitted.)

In *Slice v. Choicedata Consumer Servs., Inc.*, No. 3:04-CV-428, 2005 WL 2030690, at *3 (E.D. Tenn. Aug. 23, 2005), after considering the plain language of the FCRA and the undisputed Certification of Equifax Inc.'s employee, the court held that Equifax Inc. was not a "consumer reporting agency." 2005 WL 2030690, *3. The court explained that in order for a plaintiff to state a claim under the FCRA, a defendant must fall into one of three groups: (1) a consumer reporting agency; (2) a user of consumer reports; or (3) a furnisher of information to consumer reporting agencies. *Id.* The court dismissed Equifax Inc. holding that a violation of the provisions of the FCRA "necessarily must be committed by a "consumer reporting agency." *Id.* The Court also held that Equifax Inc. did not violate the FCRA because it is not a consumer reporting agency. *Id.*

The *Greear*, *Channing*, and *Slice* decisions are three in an unbroken line of decisions from district courts dismissing Equifax Inc. under circumstances similar to those presented here. *See also McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at *9 (N.D. Tex. Mar. 6, 2017) (dismissing Equifax Inc.)*; Ransom v. Equifax Inc.*, No. 09-80280-CIV, 2010 WL 1258084, *3 (S.D. Fla. Mar. 30, 2010) (dismissing Equifax Inc. because "[b]ased on this record, the Court concludes, as a matter of law, that Equifax, Inc. has not violated the FCRA because

it is not a consumer reporting agency and has not prepared a consumer report for [plaintiff]."); *Frihat v. Citimortgage, Inc.*, No. 07-CV-946, Doc. 60 at 4-5 (W.D. Mo. Dec. 1, 2009) (dismissing Equifax Inc. and citing cases for the proposition that "it [is] not a consumer reporting agency for purposes of the FCRA") (attached hereto as Exhibit 1); *Persson v. Equifax Inc*., No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (same) (attached hereto as Exhibit 2); *Weiler v. Equifax Inc*., No. 2:99-CV-936, Doc. 29 at 2-4 (W.D. Pa. Nov. 16, 2000) (same) (attached hereto as Exhibit 3).

Mr. Spencer alleges that Equifax Inc. violated § 1681g of the FCRA. (ECF No. 16 ¶ 65). Specifically, Mr. Spencer alleges he made two written requests to Equifax Inc. for his "full consumer file disclosure." (*Id.* ¶¶ 22, 28). Both letters are addressed ambiguously to "Equifax" without further appellation. (ECF No. 16-1 at 6; ECF No. 16-2 at 7). Mr. Spencer further alleges that in response to the first request, he received a letter and a "credit report" "which was not responsive to his request." (*Id.* ¶ 23). Mr. Spencer attached only two pages of the sixteen page correspondence to his FAC. (ECF No. 16-3 at 4-5). Even on the two pages he provided, the only Equifax entity named is EIS, the only address provided is EIS's, and both are provided twice, once on each page. (*Id.*). In response to the second request, Mr. Spencer alleges that he received a "letter stating in part he was not eligible for a free copy of his credit file." (*Id.* ¶ 31). The reply letter clearly states that it was sent by Equifax Information Services LLC:

Please return this letter along with the requested information and your original correspondence/request to the address below.

>   Equifax Information Services LLC
>   PO BOX 105167
>   Atlanta. GA 30348-5167

Thank you for the opportunity to assist you.

Equifax Information Services LLC

(ECF No. 16-3 at 6). Mr. Spencer seeks statutory damages of $1,000, attorney's fees and costs pursuant to § 1681n of the FCRA. (*Id.* at 65). He does not allege or seek any actual damages. (*Id.*).

Despite the evidence that Mr. Spencer provided as exhibits to the FAC clearly indicating that the communications were sent from EIS, he nevertheless alleges with no support that Equifax Inc. and its subsidiaries, such as EIS and Equifax Consumer Services, LLC, "transfer communications from consumers, as well as consumer information and data based on consumer information and communications," (ECF No. 16 ¶ 10), "Equifax Inc. entities such as EIS regularly share FCRA restricted information with sibling[s]," (*Id.* ¶ 14). Mr. Spencer alleges that the Equifax entities have the same branding, labeling, and logo. (*Id.* ¶¶ 9, 11).

Mr. Spencer concedes that Equifax Inc. is a parent holding company of EIS. (*Id.* ¶ 7). Thus, it appears that Mr. Spencer is attempting to assert an argument that the corporate veil should be pierced. (*Id.*). Such an argument should be rejected. "It is a general principle of corporate law deeply ingrained in our economic and legal

systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Channing*, 2013 WL 593942, at *3 (quoting *United States v. Bestfoods,* 524 U.S. 51, 61 (1998) (quotations omitted)).

A corporation—or other artificial entity—is a legal fiction. *Bruun v. Cook,* 280 Mich. 484, 495, 273 N.W. 774 (1937). It is " 'an artificial being, invisible, intangible, and existing only in contemplation of law.' " *Id.,* quoting *Dartmouth College Trustees v. Woodward,* 17 U.S. (4 Wheat.) 518, 636 (1819). "[A]bsent some abuse of corporate form," courts honor this fiction by indulging a presumption— often referred to as the corporate veil—that the entity is separate and distinct from its owner or owners. *See Seasword v. Hilti, Inc. (After Remand),* 449 Mich. 542, 547-48, 537 N.W.2d 221 (1995).

Michigan law respects the corporate form, and its courts recognize and enforce separate corporate entities. *See, e.g.*, *Wells v. Firestone Tire & Rubber Co.,* 421 Mich. 641, 650-51, 364 N.W.2d 670 (1985), and *Seasword v. Hilti, Inc. (After Remand),* 449 Mich. 542, 547, 537 N.W.2d 221 (1995) ("It is a well-recognized principle that separate corporate entities will be respected."). Piercing the veil of a corporate entity is an equitable remedy sparingly invoked to cure certain injustices that would otherwise go unredressed in situations "where the corporate entity has been used to avoid legal obligations...." *Wells*, 421 Mich. at 651, 364 N.W.2d 670. It

is therefore a remedy, and not a separate cause of action, something which the federal courts applying Michigan law have previously recognized. *See In re RCS Engineered Prod. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996), and *Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 953-54 (E.D. Mich., 1998).

The Michigan Supreme Court established three elements for piercing the corporate veil of a subsidiary:

> Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary, I believe it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable. The rule is correctly stated by Ballantine in an article on the separate entity of corporations in 60 American Law Review page 19, as follows: 'But to justify treating the sole stockholder or holding company as responsible it is not enough that the subsidiary is so organized and controlled as to make it 'merely an instrumentality, conduit or adjunct' of its stockholders. It must further appear that to recognize their separate entities would aid in the consummation of a wrong.'

*Gledhill v. Fisher & Co.*, 272 Mich. 353, 357–58, 262 N.W. 371, 372 (1935). Thus, the party requesting relief from recognition of the entity's separate existence must prove (1) control by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant. *Maki v. Copper Range Co.,*

121 Mich. App. 518, 524-25, 328 N.W.2d 430 (1982), (citing *Gledhill,* 272 Mich. at 357-58, 262 N.W. 371).

Using the test stated in *Gledhill* as the foundation, when considering whether to disregard the separate existence of an artificial entity, a court must first examine the totality of the evidence surrounding the owner's use of an artificial entity and, in particular, the manner in which the entity was employed in the matter at issue. *Klager v. Robert Meyer Co.*, 415 Mich. 402, 411-12, 329 N.W.2d 721 (1982); *Rymal v. Baergen*, 262 Mich. App. 274, 294, 686 N.W.2d 241 (2004); *Brown Bros. Equip. Co. v. State Hwy. Comm.*, 51 Mich. App. 448, 452, 215 N.W.2d 591 (1974). From this evidence, the court must determine whether the evidence establishes that the owner operated the entity as his or her alter ego—that is, as a sham or mere agent or instrumentality of his or her will. *See Seasword,* 449 Mich. at 548, 537 N.W.2d 221; *Gottlieb v. Arrow Door Co.,* 364 Mich. 450, 452, 110 N.W.2d 767 (1961) (noting that there were no "proofs of fraud, sham, or other improper use of the corporate form" to justify disregarding the separate existence of the entity at issue); *People ex rel. Attorney General v. Mich. Bell Tel. Co.*, 246 Mich. 198, 204, 224 N.W. 438 (1929).

The court then must determine whether the manner of use effected a fraud or wrong on the plaintiff. *Gledhill,* 272 Mich. at 358, 262 N.W. 371. In considering this element, it is not necessary to prove that the owner caused the entity to directly harm

the plaintiff; it is sufficient that the owner exercised his or her control over the entity in such a manner as to wrong the plaintiff. *Id.; see also Foodland Distrib. v. Al–Naimi*, 220 Mich. App. 453, 459-60, 559 N.W.2d 379 (1996) (agreeing that there was evidence of fraud, but noting that courts may disregard the separate existence of an entity when the owner manipulated his or her ownership for his or her own purposes and interests to the prejudice of an innocent third party even in the absence of fraud); *Soloman v. Western Hills Dev. Co. (After Remand),* 110 Mich. App. 257, 264, 312 N.W.2d 428 (1981) ("Although it is clear that the corporate form may be disregarded to prevent injustice and to reach an equitable result, we believe that the injustice sought to be prevented must in some manner relate to a misuse of the corporate form short of fraud or illegality."). But it bears repeating that establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence. *Gledhill,* 272 Mich. at 359-62, 262 N.W. 371.

Finally, the trial court must determine whether the wrong would cause the plaintiff to suffer an unjust loss. *Id.* at 359, 262 N.W. 371; *Foodland,* 220 Mich. App. at 460, 559 N.W.2d 379. If disregarding the separate existence would harm innocent third parties, it may be just to allocate the loss to the plaintiff, notwithstanding the wrong. *See Kline v. Kline*, 104 Mich. App. 700, 704, 305 N.W.2d 297 (1981). Similarly, a loss is not unjust if the plaintiff had full knowledge

12

of the circumstances surrounding the owner's use of the entity and agreed to proceed despite that knowledge. *Klager,* 415 Mich. at 415 n. 6, 329 N.W.2d 721 ("[A] plaintiff may not seek to disregard the corporate entity when he is fully aware of the character of the corporation with which he deals...."). If, considering the totality of the equities, the trial court would be consummating a wrong by honoring an entity's separate existence, the court may disregard the entity's separate existence. *Gledhill,* 272 Mich. at 358, 262 N.W. 371.

Mr. Spencer's conclusory allegations are insufficient to plead his alter ego claim as compared to the elements listed above that are considered under Michigan law. *See Gledhill*, 272 Mich. at 358, 262 N.W. 371. Mr. Spencer cannot save his claims against Equifax Inc. by creating a theory having no basis in reality. Mr. Spencer's allegations are not well-pled and therefore, should not be afforded any weight. Accordingly, the Court should dismiss Mr. Spencer's claims against Equifax Inc.

Dismissal is warranted here just as it was in *Greear*, *Channing*, *Slice*, *Ransom*, *McDonald, Frihat*, *Persson*, and *Weiler*. The issues are virtually identical. Equifax Inc. is not a consumer reporting agency and, therefore, is not subject to the FCRA and cannot be held liable under the FCRA. There is no reason for this Court to deviate from this strong and unbroken line of authority.

## II.    Mr. Spencer's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.

Mr. Spencer's FAC is also subject to dismissal under Rule 12(b)(6) against both Equifax Inc. and EIS because it fails to state facts sufficient to support a claim for relief under the FCRA. Mr. Spencer alleges that "Equifax and Equifax Information Services, LLC repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1)." (*See* ECF No. 16 ¶ 65). Section 1681g(a)(1) of the FCRA states that, upon request, a consumer reporting agency shall disclose "[a]ll information in the consumer's file at the time of the request, except that (A) if the consumer requests that his social security number be masked the CRA shall do so, and (B) the CRA is not required to disclose information concerning "credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1). To prevail on a claim based on § 1681g(a)(1), then, a plaintiff must adequately plead that the CRA failed to provide the consumer with the consumer file. Here, Mr. Spencer merely recites in conclusory fashion that he did not receive a full consumer file disclosure at the same time admitting Equifax[1] timely responded and provided a "credit report" to him (*See* ECF No. 16 ¶ 23). Mr. Spencer's averments are insufficient.

---

[1]    As set forth in Argument Section I, Equifax Inc. is not a CRA. Equifax Information Services LLC is a CRA, and it is the entity that responded to Mr. Spencer's two written requests. (*See* ECF No. 16-3 at 4-6).

14

### A.   "Consumer file" is defined as the information contained in a consumer's credit report/disclosure.

The Federal Trade Commission ("FTC")[2] interpreted the term "file" in 1681g to be limited to material included in a consumer report that would be sent to a third party. See 40 Years Commentary, p. 71. "[A]ncillary records" such as "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file.'" *Id.* The Seventh Circuit in *Gillespie v. Trans Union Corp.* held that "file" meant information contained in a consumer report produced by the CRA. *See* 482 F.3d 907, 908-10 (7th Cir. 2007). *Gillespie* cites the FTC's commentary on §1681g(a)(1) regarding the limited scope of the term "file": "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* at 909 (quoting 16 C.F.R. pt. 600, app. § 603).

_____

[2] The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition, in July 2011, the FTC published "40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff Report with Summary of Interpretations" ("40 Years Commentary") (available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf). The CFPB has not issued any contrary interpretation and has cited the 40 Years Commentary in amicus briefs on other topics. *See Moran v. The Screening Pros, LLC*, 9th Cir. Cause No. 12-57246 10/4/13, Dkt. 22.

"Congress, it seems, chose to limit the right to contest information to material *actually contained in consumer reports*. And of course it was free to draw the line as it did." *Gillespie*, 482 F.3d at 910 (emphasis added). Mr. Spencer alleges, "Upon information and belief Defendants have far more information relating to Plaintiff in their file(s) and/or database(s) including archived information." (ECF No. 16 ¶ 41). Mr. Spencer offers no factual enhancements to support his speculative conclusory statement. Nonetheless, to the extent such archived information exists, it is not part of the file to be produced under §1681g as interpreted by the FTC and courts.

### B.   Mr. Spencer admits he received a copy of his credit report/disclosure from Equifax.

Mr. Spencer misunderstands how a "consumer report" is different from a consumer disclosure or credit file. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004); *Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *7 (S.D. Ala. Feb. 17, 2010). "Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or for other purposes. *Pettway*, at *7 (citing 15§ 1681a(d)). In contrast, a "consumer disclosure" or "consumer file" is a CRA's file that is provided to the consumer, not to third parties, that contains information about the consumer recorded and retained by the CRA. *Id.* (citations omitted). In other words, there cannot be a consumer report without delivery to a third party.

Mr. Spencer's sole allegation against Equifax is that he did not receive his "full consumer file disclosure" as requested. (*See* ECF No. 16 ¶¶ 22-23, 28, 31). Mr. Spencer states that he sent Equifax a request for his full consumer file disclosure, and in response received a copy of his "credit report." (*Id.* at ¶¶ 22-23). He does not dispute that he received this document upon his request, as required by § 1681g. As defined by case law discussed above, a credit report goes to a third party. Because Mr. Spencer, the consumer, was the recipient, what he received was exactly what he requested, namely a full consumer file disclosure.

Thus, by Mr. Spencer's own admission, Equifax complied with § 1681g(a)(1) and relevant federal case precedent by providing his consumer disclosure to him. Accordingly, Mr. Spencer has failed to allege sufficient facts to support a cause of action against Equifax under the FCRA, and the Court should dismiss his claim under Rule 12(b)(6).

### C.   Mr. Spencer provides no factual basis for his assertion that the "credit report" he received was not his "full consumer file disclosure."

Notably absent from Mr. Spencer's FAC is any factual enhancement that specific information that should have been in the disclosure was missing. Instead, he offers speculative conclusions with no factual basis that information has been excluded from his consumer file. He acknowledges the speculative nature of his

statements by stating that "one can only surmise." (*See* ECF No. 16 ¶ 50). He assumes that such information includes the following categories:

- "additional information that is provided to prospective creditors, insures, employers and other third parties beyond that which Plaintiff has ever had access to or had the opportunity to review for accuracy," (*id.* ¶ 41);

- "negative codes or erroneous account information, among other things, that is provided to prospective creditors, insures or employers" (*id.* ¶ 42);.

Specifically, he alleges "[u]pon information and belief" that these types of information are missing from his disclosure. (*Id.* ¶¶ 41-42). Since the decision of *Twombly* and *Iqbal*, various district courts have stated that a plaintiff may plead facts "upon information and belief" in two circumstances: (1) where the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible. *See, e.g.*, *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted)); *Price's Collision Ctr., LLC v. Progressive Haw. Ins. Corp.,* 2013 WL 5782926, at *4 (M.D. Tenn. Oct. 28, 2013) (quoting *Arista Records, LLC,* 604 F.3d at 120); *Kline v. Mortg. Elec. Registration Sys., Inc.,* No. 3:08cv408, 2011 WL 1233642, at *6 (S.D. Ohio Mar. 29, 2011) (citing *Arista Records, LLC,* 604 F.3d at 120; *Simonian v. Blistex, Inc.,* No. 10 CV 01201, 2010 WL 4539450, at *3 (N.D. Ill. Nov. 3, 2010)) ("even in the post-*Iqbal* world, courts have recognized that facts may be alleged on the basis of information

18

and belief, particularly when those facts are within the possession of the defendant"); *Antioch Litig. Trust v. McDermott Will & Emery LLP,* 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010) ("As an initial matter, Defendant claims that Plaintiff's allegations that are based 'upon information and belief' ... and allegations that use the term "appear" ... should be dismissed because they are speculative. However, Defendant fails to cite any legal authority supporting its contention. Moreover, qualifying words such as 'upon information and belief' and 'appear' are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts."); *Lewis v. Taylor,* No. 1:10–CV–00108, 2010 WL 3875109, at *2–3 (S.D. Ohio Sept. 21, 2010) (allegations upon "information and belief" sufficient from which a court may infer a plausible cause of action). Allegations made on "information and belief" are therefore appropriate where a complaint contains supporting factual allegations.

Here, the FAC contains mere conclusory statements and provides no factual basis for the assertion that any specific information has been withheld from the document he admits receiving. Mr. Spencer's FAC should be dismissed because he has alleged no facts sufficient to support any recognizable cause of action under § 1681g.

## **CONCLUSION**

Defendants, Equifax Inc. and EIS, respectfully request that this Honorable Court dismiss Mr. Spencer's FAC pursuant to Rule 12(b)(6) and for such other relief as the Court deems necessary.

Respectfully submitted this 1st day of May, 2018.

*/s/ Kendall W. Carter*
Kendall W. Carter
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: 404-572-2495
Fax: 404-572-5100
Email:kcarter@kslaw.com

*Attorneys for Equifax Inc.*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 1st day of May, 2018, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system and via U.S. Mail to:

Nathaniel Spencer, III
2711 Chaparral St.
Kalamazoo, MI 49006
(269) 599-7808

Tamara Elizabeth Fraser
Williams Williams Rattner & Plunkett PC
380 N Old Woodward Ave., Ste. 300
Birmingham, MI 48009
(248) 642-0333
Fax: (248) 642-0856
Email: tefraser@wwrplaw.com

Sandra Davis Jansen
Scott E. Brady
Schuckit & Associates PC
4545 Northwestern Dr.
Zionsville, IN 46077
(317) 363-2400
Email: sjansen@schuckitlaw.com
Email: sbrady@schuckitlaw.com

*/s/ Kendall W. Carter*
Kendall W. Carter