FILED KZ
May 29, 2018 12:05 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
jlb  Scanned by

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MCHIGAN

| | |
|---|---|
| NATHANIEL SPENCER III<br>*Plaintiff.*<br><br>vs<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.; TRANS UNION,<br>LLC; EQUIFAX, INC.; EQUIFAX<br>INFORMATION SERVICES, LLC<br>*Defendants* | **Case No 1:18-cv-194**<br><br><br><br><br><br>**TRIAL BY JURY DEMANDED** |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES, LLC MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO SATE A CLAIM UNDER RULE 12(b)(6)

NOW COMES Plaintiff, Nathaniel Spencer III and hereby asks this court to deny Defendant's Motion to Dismiss for Failure to Sate a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and sates as follows.

### INTRODUCTION

Plaintiff filed his Original Complaint alleging violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 g(a)(1) against Experian Information Solutions, Inc. (Experian), Trans Union, LLC. (Trans Union) and Equifax, Inc (Equifax). Experian and Tans Union answered the original complaint while Equifax filed a motion to dismiss. Plaintiff then filed a Motion for Leave to File his First Amended Complaint alleging violations of the same statute against the same Defendants and added Equifax Information Services, LLC (EIS) as an additional Defendant. That motion was granted and the First Amended Complaint was docketed on April 13th, 2018 [Doc. 16] Equifax's motion to dismiss Plaintiff's Original Complaint was Dismissed as Moot [Doc.25]. Equifax, Inc. and EIS (Efx. Defendants) filed a joint Motion to dismiss Plaintiff's First Amended Complaint [Doc. 23] and Breif in support [Doc. 24] on May 1st, 2018.

Plaintiff's claim is clearly for the violation 15 U.S.C. 1681g(a)(1)[1] Plaintiff alleges Equifax Inc. is in violation of 1681x[2] "Corporate and technological circumvention prohibited... to prevent a consumer reporting agency from circumventing or evading treatment as a consumer reporting agency..." as it **operates** as a Consumer Reporting Agency as defined in § 1681a(p)[3] "[m]eans a consumer reporting agency that regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties..." and §1681a(f)[4] in everyday business yet it claims not to be a Consumer Reporting Agency in certain situations for example to avoid litigation. Plaintiff has shown in his First Amended Complaint that Equifax conveniently interchanges the names of it's various entities using just the name "Equifax" when it suits its needs in it's communication with consumers indicating an attempt to conceal the fact that Equifax, Inc. and subsidiaries operate as one CRA rather than operating as separate and distinct entities which they hold themselves out to be to the public, shareholders and regulators in violation of 15 U.S.C. § 1681x and 12 CFR 1022.140[5]. making the Defendant EFX liable for damages for noncompliance with 15 U.S.C. § 1681g(a)(1).

On the first page of Defendants 1st response what is displayed in the address window is Www.Equifax.com/fcra **not EIS** and in big bold letters at the top of this first page it says **EQUIFAX**, of course the link shown in the address window takes you directly to the EIS website, Right? Wrong, it takes you to an Equifax website[6]. At the top of this webpage you will see Equifax Free and Discounted Disclosures **NOT EIS** if you visit this website, you will see Copyright Equifax 2018 at the bottom, again **NOT EIS**. EFX's 1st response to Plaintiff's 1st request letter concerning this issue is from Equifax **NOT EIS**. *See* Exhibit 1

Moving on to the second page of that same correspondence, in **big bold letters** at the top of this page it says **Equifax** then in the body of the letter it states "...you may be able to initiate an investigation...complete the enclosed Research Form and return it to...Equifax Information

---

[1] https://www.gpo.gov/fdsys/pkg/USCODE-2010-title15/pdf/USCODE-2010-title15-chap41-subchapIII-sec1681g.pdf
[2] https://www.gpo.gov/fdsys/pkg/USCODE-2015-title15/pdf/USCODE-2015-title15-chap41-subchapIII-sec1681x.pdf
[3] https://www.gpo.gov/fdsys/pkg/USCODE-2010-title15/pdf/USCODE-2010-title15-chap41-subchapIII-sec1681a.pdf
[4] https://www.gpo.gov/fdsys/pkg/USCODE-2010-title15/pdf/USCODE-2010-title15-chap41-subchapIII-sec1681a.pdf
[5] https://www.gpo.gov/fdsys/pkg/CFR-2012-title12-vol8/pdf/CFR-2012-title12-vol8-sec1022-140.pdf
[6] https://aa.econsumer.equifax.com/aad/landing.ehtml (verified on 5-13-18, if you go to this webpage you will see Copyright Equifax 2018 at the bottom)

Services, LLC....**NOTE:  Sending the Request Form to any other address will delay the processing of your request.**" [Doc. 16, Ex.3] (note here that it says delay the not negate) Plaintiff was not requesting an investigation, in Plaintiff's first letter concerning this issue he was clearly requesting his **full consumer file disclosure** pursuant to 1681g(a)(1) [Doc. 16, Exhibit 1].  Equifax did not provide this, they sent a credit report.

Being a reasonable person Plaintiff sent EFX a second letter requesting his full consumer file disclosure Defendant sent Plaintiff a letter stating "We have received your request for a copy of your **EQUIFAX** credit report…" **(Again not EIS).**  Defendants second response is from EIS but the whole letter deals with how Plaintiff can buy his "disclosure" for a "…processing fee (currently $11.50)…" [Doc. 16, Ex.3] EIS goes on to explain that several states require that their residents are able to get more than one free copy of their credit file "…..which is requested through the **Central Source as well as through Equifax." (not EIS).**  Then at the end of this letter EIS provides an address to send his payment too.  Plaintiff clearly was not trying to buy his "…Equifax credit report…".  Paintiff's second letter concerning this issue was clearly requesting his **full consumer file disclosure** pursuant to 1681g(a)(1) [Doc. 16, Exhibit 2].  EFX did not provide this they sent a letter trying to sell Plaintiff his credit report which was not responsive to Plaintiff's second request for his full consumer file disclosure. [Doc. 16, Ex.3]

Plaintiff did much more than, as defendants counsel states  "…repeats statutory language and offers merely speculative and conclusory allegations that he received a "credit report" when he requested a full consumer file disclosure."  Plaintiff provided defendants with factually correct, detailed and fully articulated information in his First Amended Complaint, that included exhibits supporting his claim.  For Example, in Plaintiff's First Amended Complaint (FAC) it states "Plaintiff had **requested and received** a full consumer file disclosure from LexisNexis in January 2018 that contained about 86 pgs. Of consumer information including **10 individual reports** [Doc.16, Ex.6] allot of the information about plaintiff in some of these reports were sourced from Equifax dating back to 1990." some of the information provided to LexisNexis by Equifax was not provided to Plaintiff upon his lawful request of his full consumer file disclosure.

Plaintiff wrote two letters clearly articulating his request citing the exact language of the statute which MANDATES' Defendant to comply with his request for his full Consumer File Disclosure [Doc. 16, Ex 1-2] giving the defendant more than "adequate notice" to comply with his requests pursuant to 15 U.S.C. § 1681g(a)(1).  Contrary to Defendant's argument F.R.C.P.

8(a)(2) does not require Plaintiff prove his case at the notice pleading stage but that each claim include a "short and plain statement...showing that the pleader is intitled to relief." The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S.* 544, 555 (2007). Plaintiff's FAC should not be dismissed because it states a plausible cause of action under *Twombly* and F.R.C.P 8(a)(2).

## STANDARD OF REVIEW

When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the Plaintiff. *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Cir. 1996); *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir. 1996). Only if no possible construction of the alleged facts will intitle Plaintiff to relief should the court grant Defendant's motion. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). The issue is not whether a Plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). "The question therefore is whether in the light most favorable to the Plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Beanal v. Freeport McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999). The court "should view the complaint in the light most favorable to the plaintiff." *Mylabs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). If the factual allegations in Plaintiff's complaint support any legal theory that entitles Plaintiff to some relief, the court should overrule Defendant's motion.

## ARGUMENTS AND AUTHORITIES

### I.    Equifax Is Not a Consumer Reporting Agency.

The standard here is that Plaintiff's detailed factual allegations must be accepted as true and, as shown below, demonstrate that Plaintiff has stated a claim under the FCRA for the relief he has requested. The disputes raised by Defendant's are not legal, but factual. Plaintiff is not required to provide in full detail all facts that might be submitted on summary judgement or at trial. A complaint is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" F.R.C.P. 8(a)(2). Plaintiff has alleged sufficient detail by which the Defendants can answer and the Court can determine the plausibility of his claim.

Equifax, Inc. **operates** its business hyping itself as "one of the big three" CRA's along with Exeprian and TransUnion. Legislators obviously recognize Equifax, Inc. is a CRA as evidenced by the letter from Congress to Equifax, Inc. dated Feb. 20, 2018. [Doc. 16, Ex.5] In fact King & Spalding itself on behalf of **Equifax, Inc**. sent a letter to the State Attorney General of all the State's regrading the data breach in 2017 the letter refers to **Equifax, Inc. not a data breach of Equifax Information Services, LLC's database.** *See* Exhibit 2. There is no mention that another company's database was hacked or that a company other than Equifax, Inc. owns and maintains the database. It is not only a matter of how the company is organized but more importantly how the information in the multiple consumer databases under **Equifax, Inc.'s control** is used by various entities.

Equifax, Inc. does not identify on it's webpage to consumers, regulators and the public at large that EIS is the CRA but that is where consumers are sent to obtain credit reports. Each webpage uses only the name "Equifax" with the Equifax logo at the top of the page while at the bottom of each page in the copyright notice it clearly states "Copyright Equifax, Inc. 2018"[7] [Doc. 16, Ex. 4] Equifax's web pages refer to "your Equifax credit report" rather than your Equifax Information Services, LLC (EIS) credit report. There is no reference to EIS being the provider of an "Equifax credit report" Equifax, Inc. is very consistent in it's use of only the word "Equifax" it's communications both on the web and in correspondence with consumers, for example communication with Plaintiff . Exhibit 1 This gives rise to the belief that Equifax, Inc. is in fact the company providing the information that **any** customer or consumer would seek or receive various consumer reports not limited too credit reports.

Which companies under the "Equifax" umbrella are using what information, how it is being used and accessed, is the major question here to determine whether Equifax, Inc. is in fact a CRA as alleged by Plaintiff. How they operate is what Plaintiff seeks to bring to light to show that Equifax, Inc. does in fact **operate** as a CRA in a factual sense because of it's concerted efforts to structure itself through various divisions and/or subsidiaries such as EIS and to allow those subsidiaries to access the same information to avoid liability which is strictly prohibited under 15 U.S.C §1681x and 12 CFR 1022.140. The adage, if it looks like a duck, walks like a duck, quakes like a duck, it's probably a duck, is very fitting in this case

---

[7] https://www.equifax.com/personal/products/credit/report-and-score/ (last visited on 05/15/18), see also https://www.equifax.com/personal/ (last visited on 05/15/18),

Equifax provides case law in support of its motion to dismiss, that Equifax, Inc. is not a CRA such as *McDonald v. Equifax Inc.,* and *Ransom v. Equifax, Inc.,* neither case is analogous or comparable to Plaintiff's case at this stage of litigation as both Plaintiffs were disputing specific information in their credit report and the decisions for both Plaintiff's cases were made at the summary judgement stage of their cases. Mr. Spencer's claim is clearly not about disputing information in his credit report and we are not at the summary judgement stage of Mr. Spencer's case. It is improper to use cases that were adjudicated in summary judgement in support of a motion to dismiss. Defendant Euifax, Inc. went on list other cases *Greear v. Eufax, Inc., Channing v. Equifax, Inc. and Slice v. Choicedata, Consumer Servs., Inc., Persson v. Equifax Inc. and Weiler v. Equifax, Inc.*[8] Dismissal was granted at summary judgement in those cases also. Judge Lauck stated, "However, every decision cited by Equifax, Inc. was rendered at the summary judgement stage...Further, in each of the cases cited above, the plaintiff proceeded pro se or failed to oppose the motion. Such rulings cannot provide persuasive support for the Defendants' position at the Motion to Dismiss stage." In the Memorandum Opinion denying Equifax, Inc.'s motion to dismiss. *Jones v. Equifax, Inc.* U.S. District Court for the Eastern District of Verginia 3:14-cv-00678 (Aug. 27, 2015) Doc. 54 fn 11. This case should proceed allowing the facts to be discovered and presented rather than hidden which is clearly the desire of the EFX Defendants.

Plaintiff alleges Equifax, Inc. violated 15 U.S.C 1681 § g(a)(1). The letters that Plaintiff wrote are far from ambiguous, they clearly state Plaintiff's requests for his Full Consumer File Disclosure [Doc. 16, Ex.1-2] EFX's responses to Plaintiff's letters is what was ambiguous, misleading, and completely non-reponsive to Plaintiff requests. As I mentioned earlier contained on the 1st. page of the first letter received by Plaintiff the Court will see in the address window of this correspondence Www.Equifax.com/fcra, Atlanta GA 30348, then in big bold letters across the top of the page it says **EQUIFAX** not EIS, Exhibit 1.

In the second page of this document it clearly states "Using the Internet to initiate an on-line investigation request will expedite the resolution of your concerns. Or you may complete the enclosed Research Request Form and return it to...." The letter goes on to list the address of

---

[8] Efx. Defendants attached three Exhibits to their filing [Doc.24] to support their position however all three are problematic; in Frihat v. Citimortgage, Inc. (Ex.1) the plaintiff failed to prosecute or counter Defendant's arguments; in Persson v. Equifax Inc. (Ex.2) the plaintiff failed to counter Defendants arguments or to amend complaint; in Weiler v. Equifax Inc. (Ex.3) the Plaintiff failed to dispute Defendant's evidence at all.

Equifax Information Services, LLC (EIS) [Doc. 16, Ex.3] Mr. Spencer's first letter was not disputing information in his credit report, why would he send his second letter requesting a full consumer file disclosure to an address clearly related to a request for an investigation?

It is perfectly logical and reasonable for Mr. Spencer to send his second letter to **Equifax** as this is who sent him the **first response letter and his credit report**. I would like to mention at this point, if Mr. Spencer sent his initial letter to the wrong entity to get his disclosures who sent Plaintiff the credit report that came along with Equifax's first response letter?

Moving on to the Second letter that EIS sent Plaintiff. In EFX's motion to dismiss Plaintiffs First Amended Complaint (FAC) EFX's counsel cleverly takes quotes out of context thus distorting their meaning, for example counsel uses the following quote from Plaintiffs FAC, "letter stating in part he was not eligible for a free copy of his credit file" [Doc. 24, pg.7], counsel conveniently fails to mention that later in that very same paragraph of Plaintiffs FAC Plaintiff goes on to quote EIS's response to Plaintiff's second letter, "….in addition to the Annual Free copy which is requested **through the Central Source as well as through Equifax…**" not EIS [Doc. 16, ¶ 31,]., according to EIS's own letter sent to Mr. Spencer Equifax admits to providing consumer information to consumers. [Doc. 16, Ex. 3] Then Defendant EFX goes on to take the bottom portion of EIS's response to Plaintiff's second letter and leaves out the majority of the letter which was an explicit attempt by EIS to sell Plaintiff a credit report which was completely non-responsive to Plaintiffs clear requests for his full consumer file disclosure. [Doc. 16, Ex.3]

Upon information and belief the first letter was sent by Equifax putting fourth EIS as the investigating entity of Equifax and the second letter was sent by EIS and was providing Plaintiff with information about where to purchase his credit report from, neither of EFX's responses to Plaintiff's clear requests said anything about where Plaintiff should send his letters to receive his full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1). Plaintiff has provided more than enough information supporting his claim at this juncture of litigation by which the Defendants can answer, and the Court can determine the plausibility of his claim.

Equifax, Inc. is the parent company of EIS. Plaintiff is not presenting an argument that the corporate veil should be pierced the issue that Plaintiff is attempting to bring to light is that Equifax, Inc. **Operates** as a CRA and therefore it is a CRA pursuant to § 1681a(p) and § 1681a(f), therefore are **mandated** to comply with § 1681x and 12 CFR 1022.140 and both

CRA's are **mandated** to provide Plaintiff with his full consumer file disclosure pursuant to § 1681g(a)(1). This is the real and solid foundation that Plaintiffs claim rests. The fact that Equifax, Inc. is a CRA is established by determining how the data in Euqifax, Inc.'s databases regarding Plaintiff is used and by whom. The FCRA is very clear on those points. Piercing the corporate veil is a meritless argument.

Plaintiff's FAC plausibly alleges that Equifax, Inc. and it's subsidiary EIS **operate** as a single unified consumer reporting agency. The EFX defendants operate as a single FCRA governed "consumer reporting agency" Equifax, Inc. has structured itself in order to warehouse its sale of credit-reporting consumer reports in one entity and its sale of employment, payroll, and income records in a second entity. Defendants together maintain a collective set of databases that-for Defendants' day to day use are treated as an integrated pool of consumer information. Each Defendant is a CRA Equifax, Inc. freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard the Equifax units operates as if they are one in the same, a single "consumer reporting agency" Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(p) and §1681a(f).

Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties. Each of the Equifax entities is integrated as a single national credit reporting agency, with all databases marketed and made available to each of Equifax's customers regardless of structure or category of content. Defendants operate jointly as a national "CRA" as defined I 15 U.S.C. § 1681a(p) and § 1681a(f). Equifax, Inc. which operates as "Talx Corporation" and "The WorkNumber", even states on its own website "Under FCRA, we are a Consumer Reporting Agency and subject to its requirements."[9]

Equifax itself states in its 2016 10K filing "Equifax, Inc. is organized and reports its business results in four operating segments.[10] An "operating segment" is by definition a component and part of a single corporate entity:

### Identification of operating segments

---

[9] https://www.theworknumber.com/employees/FCRA/index.asp (last visited May 19, 2018)
[10] https://www.sec.gov/Archives/edgar/data/33185/000003318517000008/efx10k20161231.htm (last visited May 19, 2018)

IFRS 8 defines an operating segment as a component of an entity:

- that engages in revenue earning business activities
- whose operating results are regularly reviewed by the chief operating decision maker. The term 'chief operating decision maker' is not as such defined in IFRS8 as it refers to a function rather than a title. In some entities the function could be fulfilled by a group of directors rather than an individual and
- for which discrete financial information is available.

http://www.accaglobal.com/gb/en/member/discover/cpd-articles/corporate-reporting/ifrs8-operating.html  (last visited May 19, 2018)[11]


The S.E.C. financial statement standards are similar:

Under the new accounting standard, an operating segment is a component of a business, for which separate financial information is available, that management regularly evaluates in deciding how to allocate resources and assess performance. Specifically, SFAS No. 131 states that an operating segment is a component of a business:

> \*that engages in activities from which it may earn revenues
> and incur expenses (including revenues and expenses relating
> to transactions with other components of the same business);
> \*whose operating results are regularly reviewed by the
> enterprise's "chief operating decision maker"[15] to make
> decisions about resources to be allocated to the segment and
> assess its performance; and
> \*for which discrete financial information is available.

S.E.C. Segment Reporting Final Rules, https://www.sec.gov/rules/final/33-7620.txt (last visited May 19, 2018).  It is not common ownership that matters, but common use of a FCRA-governed database that determines whether Equifax, Inc. and EIS **operate** as a consumer reporting agency. That is a question of fact to be determined through fact evidence rather than being a mater of law as Equifax, Inc. argues.

EFX may try to deny these factual allegations, somehow.  Try as they may the allegations at this point more than support a plausible claim that the defendants are a single operating CRA.

---

[11] The ACCA (The Association of Charted Certified Accountants) is the global body for professional accountants.

How Defendants segment their data for marketing and operations purposes is immaterial.  An alleged "EIS" credit report may contain data that Equifax categorizes as "credit reporting" data" as well as information it categorizes as "WorkNumber" data, and vice versa.  How it brands its reports and what business segment it uses to deliver or sell them is immaterial.

A veil-piercing mindset such as corporation A is not responsible for the debts of corporation B is not relevant for the question of whether the Defendants **operate** together as a CRA.  This is brought under federal statute-the FCRA, 15 U.S.C. § 1681, et seq.  Determination as to whether to ignore the corporate veil in determining substantive liability of a party under federal statute is governed by federal rather than state law as the "doctrine of piercing the corporate veil is not a mere procedural rule or mere judgement enforcement mechanism, but substantively determines who is liable" under the federal statute. *Thomas v. Peacock*, 39 F .3d 493, 500-502 (4th Cir. 1994) (Applying this principal to an EISA action)).  The standard adopted by the fourth Circuit in Thomas was what it described as the "liberal veil-piercing standard" enunciated by the First Circuit,[12] *Thomas*, 39 F.3d 503-304 citing *Alman v. Danin*, 801 F.2d 1, 3-4 (1st Cir.1986) and *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir.1981).   Thus, for example, while the state common law threshold could arguably require more, the federal threshold for finding one entity an alter ego of another includes circumstances in which "adherence to the corporate fiction [would…] lead to an evasion of legal obligations." *Thomas*, 39 F.3d 504 (citations omitted).

Plaintiffs first Amended Complaint in fact provides greater detail and specificity than has been held necessary under Twombly/Iqbal I in pleading alter ego/veil piercing.  For example, in *The flexible Benefits Council v. Feltman*, 1:08cv371, 2008 WL 246545, *7 (E.D. Va. 2008), judge Cacheris rejected a corporate veil Rule 12(b)(6) argument against a Complaint that principally alleged, "Upon information and belief, all of the above actions were performed in concert with Defendants Feltman and ECFC, Ltd., as well as with other associates currently unknown to plaintiff." Feltman Complaint, ¶ 5.  Similar conclusions were reached in cases with varying degrees of pleading detail. *See e.g. Osgood v. Midwest Parking Solutions*, 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiffs allegations of the individual's control and

---

[12]The general rule adopted in the federal cases is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity," [citing Capital Telephone Co. v. FCC, 498 F .2d 734, 738 (D.C.Cir.1974]. In applying this rule, federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form [citations omitted], an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine….(Emphasis added)

dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v. Hilltop Lending Corp.,* 505 F. Supp.2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter ego claim against an individual who controlled the corporate defendant). Indeed, in *Maganallez,* the court noted that an allegation "that one of the major shareholders has 'essentially full operational control' over [the defendant] during a specific period of was sufficient to justify allowing plaintiff to proceed on an alter ego theory." *Id.* At 608 (citing In re Napster, Inc. Copyright Litig., 345 F. Supp.2d 1113, 1122 (N.D. Cal. 2005)[13]

Presently, the core dispute is whether BOTH Defendants operate as a "CRA" and are therefore subject to the FCRA. The FAC alleges that they do. Defendants' response is that the Complaint should be dismissed because they claim to have manufactured a corporate structure that separates Equifax's data between multiple controlled entities. This is an "evasion of legal obligations" imposed by the FCRA through "creative" corporate structuring and is prohibited by FCRA regulations. The Federal Trade Commission, at the time responsible for enforcement of the FCRA, promulgated regulations almost exactly on point to the EFX. Defendants *See* 16 C.F.R. Part 611. Part 611 titled "Prohibition Against Circumventing Treatment as a Nationwide Consumer Reporting Agency" and in relevant part states:

§ 611.2 General prohibition.

(a) A consumer reporting agency shall not circumvent or evade treatment as a ''consumer reporting agency that compiles and maintains files on consumers on a nationwide basis' as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. 1681a(p), by any means, including, but not limited to:

(1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

16 C.F.R. Part 611.2[14]. The FTC examples of prohibited activity precisely fit Equifax, these include:

(1) Circumvention through reorganization by data type. XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It

---

[13] *See also Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc.,* 850 F. Supp. 905 (D. Or. 1994), CitiMortgage, Inc. v. *NL, Inc., 2010* WL 1610411 (E.D.Mo. April 21, 2010); *McWilliams Ballard, Inc. v Level 2 Development,*---F.Supp.2d---,2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia Common Law); *Trabucco v. Inesa Sanpaolo, S.P.A.,*---F.Supp.2d---,2010 WL991621, *7-8 (S.D.N.Y. March 19, 2010)
[14] https://www.gpo.gov/fdsys/pkg/CFR-2008-title16-vol1/pdf/CFR-2008-title16-vol1-sec611-2.pdf

restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section[...] *See* Exhibit 3

In applying the federal standard adopted in *Thomas v. Peacock*, this Court cannot reasonably conclude the FCRA's purpose "places importance on the corporate form" to the contrary, the FCRA expressly cautions that corporate form is irrelevant and that the use of corporate associations and structures to avoid its application are prohibited.

The Efx. Defendants' argument also fails for another reason, they are each obligated to provide the full file on each consumer and the "file" consists not only of information stored in the database at the defendant's facility, but all information that could be included in a consumer report it may sell. The Third Circuit heard and rejected the same argument made by Trans Union under weaker circumstances-where the separate data that "could be" accessed by Trans Union was maintained in a database operated by an unrelated third party. The Court of Appeals rejected that argument:

Trans Union concedes that Cortez requested her credit report on multiple occasions; nevertheless, it failed to provide her with the HAWK and OFAC alert information on her report. However, Trans Union again makes an argument similar to that discussed above. It argues that the OFAC and HAWK information is not part of the consumer's "file" under the FCRA and that, it was not required to disclose the information to Cortez.

The FCRA defines "file" when used in connection with information on any consumer, as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). Trans Union attempts to avoid the obvious reach of that language by relying on the fact that the SDN List information was not part of its database; rather, as explained earlier, that information was separately

maintained by Accuity. According to Trans Union, the information should not be considered part of the consumer's file for purposes of the FCRA. Not surprisingly, Trans Union cites no cases to support this argument. The argument requires us to ignore that the FCRA specifically provides that the duty of disclosure applies to "information on [a] consumer... regardless of how the information is stored." 15 U.S.C. § 1681a(g). We do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report.

**Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report**. *Gillespie v. Trans Union Corp.,* 909 (7th Cir.2007). Moreover, as the court in *Gillespie* noted, "`file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* (quoting 16 C.F.R. pt. 600, app. § 603).

*Cortez v. Trans Union, LLC,* 617 F.3d 688, 711-12 (3d Cir. 2010) (emphasis added). Thus, when Plaintiff requested his disclosure from Equifax, even **IF** it was provided by EIS it was obligated to provide the full file-to included not only its own credit data, but also the other data it regularly sells. Either way, Mr. Spencer's claim is deeply rooted in the realm of reality well pled and supported by solid evidentiary exhibits, and case law, Plaintiff has more than alleged a plausible claim.

Even the CFPB has declared in a 2017 Consent Order that Equifax Inc. is in fact subject to the FCRA[15] on page 6 under **Part IV** the Order States:

"Equifax, Inc. is headquartered in Atlanta, Georgia, and compiles and maintains financial, consumer, and commercial data across the nation and worldwide. Equifax, Inc. is the parent company of Equifax Consumer Services LLC. Equifax, Inc. is a "covered person" as that term is defined by the CFPA, 12 U.S.C. § 5481(6)."

Equifax consents to that finding by the CFPB in its Stipulation and Consent[16] page 3:

---

[15] https://files.consumerfinance.gov/f/documents/201701_cfpb_Equifax-consent-order.pdf

"Equifax agrees that the facts described in Section IV of the Consent Order will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding before the Bureau to enforce the Consent Order, or in any subsequent civil litigation by the Bureau to enforce the Consent Order or its rights to any payment or monetary judgment under the Consent Order." (emphasis added)

It seems that the outdated "unbroken line of authority" Equifax cites has been replaced by more recent regulatory findings and is supported by Equifax's own legal representatives. Exhibit 2

## II.    Mr. Spencer's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.

Plaintiff was concise and specific in his first request letter, [Doc. 16, Ex.1] so that there would be no misunderstanding as to what EXACTLY he was requesting.  Instead of what he requested Plaintiff received a letter describing the action he should take to initiate an investigation and a credit report. Also as mentioned earlier in Plaintiffs memorandum, "On the first page of Defendants 1st response, what is displayed in the address window is Www.Equifax.com/fcra  not EIS and in big bold letters at the top of this first page it says **EQUIFAX.**" Any reasonable person would awesome that the entity that sent them that correspondence Equifax because that's who's information was in the "from" part of the letter. Exhibit 1.

In order to give Defendant a second opportunity to comply with Plaintiff's request he sent a second letter with the first letter attached to it [Doc. 16, Ex.2].  Plaintiff sent the second letter to the entity identified in the "from" portion of the first letter Equifax sent which was **EQUIFAX** Exhibit 1.  In response to that letter EIS sent information about how the Plaintiff could purchase his credit report and where to send that request to, which was EIS and was completely nonresponsive to Plaintiff's request for his full consumer file disclosure.[Doc. 16, Ex. 3] Plaintiff was not requesting his "credit score, or any other risk scores or predictors relating to the consumer."  These statements are not conclusory these are statements of **FACT** supported by

---

[16] https://files.consumerfinance.gov/f/documents/201701_cfpb_Equifax-stipulation.pdf

evidentiary Exhibits [Doc. 16 Ex. 1-3]. Plaintiff pleads in detail precisely what he was asking for, what Equifax failed to do to comply with his request and is supported by Exhibits and should not be dismissed.

### A.  "Consumer file is defined as the information contained in a consumer's credit report/disclosure"

The Efx Defendants begin by conflating the words disclosure and credit report, arguing they are synonymous and inserting words into definitions which are not there. The FCRA does not use the term "disclosure/credit report". In it's arguments the Efx Defendants begin by pointing to the Fair Trade Commission ("FTC")[17] interpretation of the term "file" and would mislead the court. The 40 years Commentary, p.71 sates:

> "[A]ncillary records "such as" "a CRA's audit trail of changes it makes in the consumer file, billing records, or the contents of a consumer relations folder, are not included in the term "information in the consumer's file." *Id.*

The FTC does **NOT** state that all a CRA is required to provide in response to a request for a full file disclosure is a "credit report." Plaintiff stated clearly in his FAC that he did NOT request any "[A]ncillary records" [Doc. 16, ¶ 47] and this **FACT** is also evidenced in Plaintiff's FAC [Doc. 16, Ex. 1,2]. A credit report is one **type of disclosure** which contains **credit** related information. However credit related information does not equate to all information contained in a CRA's files related to a consumer other than '[A]ncillary] records". Related sections of the FCRA contain exceptions to what information can be provided in a credit report which is not shared with consumer[18] but can be provided to third parties under certain circumstances.

A traditional credit report by any name never meets the requirement **Mandated** under the FCRA at 15 U.S.C. § 1681g(a)(1). A report narrowly confined to one category of information

---

[17] The interpretation and enforcement of the FCRA transferred from the FTC to the Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition in July 2011, the FTC published the "40 Years of Experience with the Fair Credit Reporting Act-An FTC Staff Report with Summary of interpretations" ("40 Years Commentary"). The report stated that the CRA must disclose all items in the consumers file, but that "ancillary records", for example "a CRA's audit trail of changes it makes in the consumers file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file." *See* 40 Years Commentary, p.71
[18] Such as 15 U.S.C. § 1681c

does not mean it is necessarily a disclosure of **all** information recorded and retained in a CRA's file regrading a consumer at the time the report is generated.  A credit report is not the only consumer report that is created from information in the CRA's file(s).  The plain language of the FCRA requires, among other obligations, that CRA's "clearly and accurately disclose" to a requesting consumer '[a]ll information in the consumer's file at the time of the request ." 15 U.S.C. § 1681g(a)(1).  The Court should note that it does not say all **Credit** information in the file…(emphasis added) All information means just that… **ALL** information outside the exclusions as stated I § 1681g(a)(1)(B) and § 1681 g(a)(2).

Mr. Spencer has pointed out that a legal "mandate" set forth as a "requirement" under law was not performed after conditions precedent to the requirement were met and the corresponding required action to trigger such an obligation under law took place.  15 U.S.C. § 1681g is just such a "mandate".  Mr. Spencer has provided facts and exhibits which demonstrate the truth of his allegations and by the plain language of the law his complaint does not rise to the level of a legal conclusion. The Efx. Defendants, by conflating language and use of a non-analogous case (*Gillespie*) would have the Court accept that congress did not mean exactly what it said but meant to use words that are simply not there[19].

The *Gillespie* case is a glaring misdirection.  First *Gillespie* Plaintiff was pursuing what the statute clearly outlines as "ancillary information" which, since it could not be included in any report shared with a third party under any circumstances, does not have to be shared with the consumer either.  Plaintiff's request letters were unquestionably explicit as to what he was asking for and it was not "ancillary information."  The language used in his requests was directly quoted from the statute. [Doc. 16, Ex.1-2] The tactics employed by Efx. Defendants in this case arise from two maneuvers; first to misrepresent the language of the statute and the interpretation of it within the FTC's official publication and second, they fail to note other controlling sections in regard to 1681g in the statute which are relevant.

The FCRA defines many different types of "files" all of which are considered to be "consumer files", ie; investigative, employment, insurance related reports etc. however it is quite specific in relation to section 1681g.  There the definition is clear (page 31 of 40 yrs. Doc.):

---

[19] Congress knows how to mandate disclosure of the full contents of a consumer's file when it intends to require such disclosure. *See, e.g., Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S.438, 452, 122 S. Ct. 941, 151 L.Ed.2d 908 2002) (stating "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).

Section 603g defines "file" when used in connection with information on any consumer, to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."[20]

The definition does **Not** contain the words "consumer file" or "credit". The definition does not identify any *type* or *sub-type of information,* particular *type* of file or limitation as to the *type* of information contained in a file.

In addition, the FTC interpretation takes the definition of what information is referred to by section 1681g even further (page 32 of 40 years doc.) under "SCOPE":

"The term "file" includes all information on the consumer that is recorded and retained by a CRA-regardless of how the information is stored – that has been or might be provided in a consumer report on the consumer. The term includes such information that a CRA has kept for archival purposes, because the definition includes all data "retained" and "stored" by the CRA."

The phrase **"has been or might be"** is key. Section 605(a) places time limits beyond which CRA's cannot Include information in consumer reports, subject to exceptions set forth in 605(b). Two sub-sections of 605(a) are **key** to the type of information retained in a CRAs files on a consumer which cannot be included in a conventional "credit report" such as can be obtained by a consumer through annualcreditreport.com, with important exceptions that the average consumer is not even aware of (page 55 of 40 yrs doc.):

**PROVISION LIMITED TO "ADVERSE" INFORMATION**
4. The seven-year reporting period applies only to "adverse" information that casts the consumer in a negative or unfavorable light. CRAs are not bound by that seven-year limit in reporting dates of employment and educational histories, because such dates are not "adverse" information.

**RETENTION OF INFORMATION IN FILES**

---

[20] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited 5/21/18)

5. CRAs may retain adverse information described in subsection (a) and furnish it in reports for purposes that are exempt under subsection (b), described below. For example, the CRA may retain obsolete information for the purpose of furnishing it to persons engaged in (1) credit transactions or the underwriting of life insurance involving
a principal amount of $150,000 or more, or (2) the employment of any individual with an annual salary expected to equal $75,000 or more. (emphasis added)

Section 605(b) states that the time period limitations in section 605(a) **are not applicable in the case of any consumer credit report** to be used in connection with (1) a credit transaction involving, or which may reasonably be expected to involve a principle amount of $150,000 or more ; (2) the underwriting of life insurance involving, or which may reasonably be expected to involve, a face amount of $150,000 or more; (3) the employment of any individual at an annual salary which may reasonably be expected o equal $75,000, or more."

These sections would lead even an unsophisticated reader to understand that when information is "deleted" by reason of time limit prohibitions for inclusion in a credit report it isn't really "deleted" at all. Rather it is "suppressed" and **"may have been or might be"** disclosed without the consumer's knowledge to a third party under certain circumstances. This is just one example of the type of information which might be **"archived"** or considered "obsolete" by the CRA. Section 1681g clearly states that this information must be disclosed to the consumer when that consumer properly asks for it.

As the FCRA defines "file" at 15 U.S.C. § 1681a(g), it couldn't be any clearer as to what must be provided upon a consumer's PROPER request. The Seventh Circuit has held that, although a consumer's "entire file" need not be disclosed upon request; "complete copies of their consumer reports" must be disclosed . **The court should note the plural nature of "reports."**[21]

The United Sates Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report," *Cortez v. Trans Union, LLC,* 617 F.3d 688, 711 (3d Cir. 2010), or by using "[c]orporate organizatins, reorganization, structure, or restructuring." to circumvent reporting

---

[21] …"[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Gillespie v. Trans Union Corp.,* 482 F.3d 907, 909 (7th Cir.2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603).

requirements. 12 C.F.R. § 1022.140(a). *Jones v. Equifax* No. 3:15-cv-112-RJC-DSC United States Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's has the audacity to admit in their own argument that they poses archived information related to Mr. Spencer and makes the conclusory statement, "Nonetheless, to the extent such archived information exists, it is not part of the file to be produced under §1681g as interpreted by the FTC and courts" [Doc. 24, ¶ 16] This may be true using the convoluted arguenets put forth by the Defendants but when looking at the plain language of the statutes and **analogous** case law as elucidated by Plaintiff Efx. Defendants argument has no merit and in some instances is just downright misleading, to say the least! And should be dismissed by the Court.

### B. Mr. Spencer admits he received a copy of his credit report/disclosure from Equifax.

Plaintiff **did** receive his credit report. Plaintiff **did not** receive his full consumer file disclosure as he requested pursuant to 15 U.S.C. § 1681g(a)(1). Which sates the consumer is intitled to "[a]ll information in the consumers file at the time of the request." The FCRA clearly defines "file" as "**all of the information** on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored 15 U.S.C. § 1681a(g). Unless defendants has no other information related to Mr. Spencer in it's files whether it has been or might be furnished in a consumer report of any kind then Efx has not provided him with his full consumer file disclosure. If Efx has given Plaintiff **ALL** the information that they have in their files related to Mr. Spencer why don't they just categorically state this in their motion to dismiss not only do they not state this, after presenting a "red herring" case, Gellespie, in an attempt to distort the meaning the statute 1681g they actually admit to having more information related to Mr. Spencer, making the conclusory Statement "Nonetheless, to the extent such archived information exists it is not apart of the file to be produced under §1681g…" [Doc. 24, pg.16] (emphasis added).

It is not reasonable to believe Efx collects and maintains consumer information on hundreds of millions of consumers[22] for decades and Mr. Spencer be the exception to this. Mr. Spencer is

---

[22] https://www.inc.com/associated-press/equifax-data-money.html (last visited 5/23/18)
"The company and its competitors have in their files the personal financial information of tens of millions of Americans like you, going back decades….."

48 years young and has lived in many different rental properties had utilities, cell phone and land line phone services and car insurances, etc. Is it not reasonable to believe that Efx. Defendants possess more information than what was provided to hm in his credit report? I would like to remind Defendant that I did receive a Lexis Nexus report and it did have information contained in it relating Mr. Spencer that was provided by Equifax to Lexis Nexus but **not provided** to Mr. Spencer when he requested his full consumer file disclosure this is simply a hard fact, *See* Exhibit 4, definitively showing that Efx has more information that it is selling to other companies and refusing to provide to Mr. Spencer upon his lawful request. Equifax is in the business of using Mr. Spencer as a commodity selling information about him but could care less if the information they have is accurate and want to deny him the opportunity to review whatever information they have for accuracy which is his right under the FCRA.

Defendant brings fourth more case law that is un-analogous and un-comparable to Mr. Spencer's complaint; in  Wantz v. Experian info. Solutions, Wantz was disputing the accuracy of specific information in his credit report and the Courts decision was rendered at the summary judgement stage of litigation;  in Pettway v. Equifax info. Servs., LLC again the plaintiff was disputing the accuracy of information within their credit report and the Courts decision was rendered at the summary judgement stage. It is inappropriate to site cases that were decided on in summary judgement to support a motion to dismiss and both cases are dealing with completely diff. issues. Mr. Spencer has gone far and beyond what is necessary in support of his case being allowed by the Court to move forward and being given at least the opportunity to flush out more of the truth than he already has.

Plaintiff asks the Court to appreciate the simplicity if this case and note that it isn't about whether any information related to Mr. Spencer that the Efx Defendants have or may have provided to a third party is accurate or not. The issue here is whether there was information in the Efx Defendants' file(s) at the time of  Mr. Spencer's request that was required to have been provided to him pursuant to his lawful request and was not. **That** is the sole claim in this lawsuit and the only issue before this Court. Defendants' argument that Mr. Spencer received his full consumer file disclosure that he specifically requested has no merit and should be rejected by the Court.

It's also incredibly difficult to opt out of the system. You could live an all-cash lifestyle, never requesting credit from any bank, but still wind up with your information in the hands of the credit companies through less-obvious sources like cable or phone companies, property tax bills, or doctors' offices….."

The Efx. Defendants' argue that by Plaintiff's own admission they complied with §
1681g(a)(1) and relevant federal precedent. Plaintiff has shown that they have done no such
thing and actually have attempted to distort the record with factual inaccuracies. Efx. Defendants
erroneously argue that Plaintiff admits he received his full consumer file disclosure when he
received is a copy of his credit report and the Court should grant dismissal based on this
extremely distorted, misleading, and wholly improper argument, considering the facts brought to
light at this stage of litigation.

### C. Mr. Spencer provides no factual basis for his assertion that the "credit report" he received was not his "full consumer file disclosure"

In the past Mr. Spencer used the website annualcreditreport.com to request a copy of his credit
report and is fully aware of what information is included in one. He knew that if he wanted
further information he would have to make a specific request for it. As stated in his FAC after
the hack of Equifax's database, the extensive media attention and public outcry it created, Mr.
Spencer became even more aware that there appeared to be additional information about a
consumer in a CRA's files than what was provided in a credit report which could be obtained
online. This caused him to research further, Mr. Spencer discovered an abundance of public
domain information that indicated there was more information that the CRA's held on consumers
than was being disclosed in credit reports provided by them either through the website or directly
upon request to the individual CRA's. Of course, if a consumer only requests their credit report
and that is provided to them electronically or in a hard copy through the mail in response then the
request has been satisfied.

Substantial reading and research revealed there was considerable amount of information
being provided about consumers to a host of entities and persons that was not necessarily directly
related to specific credit accounts such as credit cards, car loans, payroll advances, or mortgages.
Much of that information would certainly come under the purview of 15 U.S.C. § 1681a(d)
"character, general reputation, personal characteristics, or mode of living", all of which may
most certainly be used to factor a consumer's eligibility for credit, insurance, home rentals and
even deposit amounts for utilities or could prevent a consumer from obtaining all or any of the
foregoing as well as numerous other aspects of a person's life.

One very disturbing case involved false and derogatory information in a consumer's file causing a consumer extreme embarrassment and expense even to the point of having his auto insurance canceled because of a credit report provided by O'Hanlon Reports, Inc., a CRA.[23] The information was later found to be patently false and uncorroborated.

Plaintiff was very distressed to know that such damaging false information was possessed and recklessly used by a CRA. Further research revealed there were many other cases brought in several jurisdictions involving erroneous criminal or false employment information provided by CRA's to potential landlords or employers causing consumers to be denied housing or employment as a result. Based on Plaintiff's research it is clear as day that there is more information being provided to certain customers of CRA's than just current credit accounts that a consumer receives in a "credit report" (by any name) and in a number of cases that information was erroneous with negative consequences, sometimes extremely harmful to the consumer.

The facts demonstrate that the Efx. Defendants are not merely a **Credit** Reporting Agency. Equifax, Inc., and EIS **operate** as one entity and are a **Consumer** Reporting Agency under the FCRA. They collect maintain and sell an abundance of Consumer information having the ability to impact lives that is not just credit information. They respond with a current credit report when a lawful request is made for a **Full Consumer File Disclosure** of All information. Then to escape liability, seek to convince the courts their actions are in compliance with the FCRA. For far too long Equifax and other major CRA's have carefully conditioned court's, regulators and the public to think of a full file disclosure (precisely what a consumer is entitled to and Mandated by law when a proper request is made) as a credit report containing only certain **current** but **no archived** information and is not representative of all information they retain about consumers keeping the information potentially subject to dispute minimal. Undoubtedly minimizing costs, in the name of profits is a powerful incentive. What a consumer doesn't know and can't dispute, can't hurt the bottom line of the company. Avoiding consumer disputes of information which might be erroneous is healthy for a CRA's bottom line even if by doing so the

---

[23] "The file shows that you are very much disliked by your neighbors at that location [Millstone's Washington residence], and were considered to be a `hippy type'. The file indicates that you participated in many demonstrations in Washington, D. C., and that you also housed out-of-town demonstrators during demonstrations. The file indicates that these demonstrators slept on floors, in the basement and wherever else there was room on your property. The file shows that you were strongly suspected of being a drug user by neighbors but they could not positively substantiate these suspicions. You are shown to have had shoulder length hair and a beard on one occasion while living in Washington, D. C. The file indicates that there were rumors in the neighborhood that you had been evicted by neighbors from three previous residences in Washington, D. C. prior to living at the 48th Street, N. W. location."

public is kept I the dark; unaware of what harm the results of such deception they may be already suffering.  Mr. Spencer has a right under law to see ALL information in his consumer files(s) to review it for accuracy and dispute anything that is erroneous.  That is all that he is interested in.

The annualcreditreport.com website[24] (created and maintained by the major CRA's ) has <u>NO place on it where a consumer can request their full consumer file disclosure</u> but instead only provides the **consumer with the option to request a <u>credit report.</u>** *See* Exhibit 5 but according to Defendant's Motion to Dismiss "[t]here cannot be a consumer report without delivery to a third party." then they go on to say "[a] credit report goes to a third party." [Doc. 24, ¶16-17] completely contradicting the website.  If congress intended that consumers receive only a credit report, it would have stated exactly that in the statute rather than being very specific in the language of § 1681g.[25]  The truth is revealed with a common sense reading of the plain language of the statute.

There are multiple types of consumer reports that are generated by the CRA's based on information they have n their files regarding such things as rental history, criminal background, public records, employment etc. so he argument that all the Efx. Defendants had to do is provide information to Mr. Spencer that is specific to one particular type (a credit report) is fatally flawed.  Mr. Spencer is entitled to all the pieces of puzzle, not just one piece of it, so that he may get a clear picture of how the CRA's are painting him.  Defendants Quoted plaintiff's FAC [Doc.24, pg.18] but leaves out the part that says "[D]efendants have far more information relating to Plaintiff in their file(s) and/or database(s) including archived information…" [Doc. 16, ¶41] Plaintiff has shown that indeed Efx. Defedants do have archived information relating to Plaintiff. Exhibit 4

The case law that the Efx. Defendants cite in their argument is off point, not analogous and not persuasive at minimum.  In fact, Cassidy v. Teaching Co. LLC. Judge Graham sates "[i]n the Court's view, most of the Plaintiff's allegations made upon "information and belief" are plausible inferences based on the Plaintiff's factual allegations." Then goes on to allow Plaintiff's individual claim to proceed.  Mr. Spencer's  allegations are not just plausible

---

[24] https://www.annualcreditreport.com/index.action  (last visited on 5/25/18)
[25]  Congress knows how to mandate disclosure of the full contents of a consumer's file when it intends to require such disclosure. See, e.g., Barnhart v. Sigmon Coal Co., Inc., 534 U.S.438, 452, 122 S. Ct. 941, 151 L.Ed.2d 908 2002) (stating "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).

inferences he backed his allegations up with exhibits. Mr. Spencer's Lexis Nexis full file disclosure contained a substantial amount of information that was sourced from Equifax, Exhibit 4. Mr. Spencer's Lexis Nexus full file disclosure "[c]ontained about 86 pgs. Of consumer information including 10 individual reports See Exhibit 6" Mr. Spencer Factually alleged this in his FAC, [Doc. 16, ¶37, Ex. 6]. The Efx Defendants do not deny they provided the information contained in the Lexis Nexis report, They can't. It is logical and reasonable to believe upon the information presented by Mr. Spencer that Equifax has more information related to Mr. Spencer than the mere 16 pg. correspondence that was provided to him by Equifax. The Efx defendants arguments have absolutely no merit when looking at the facts on the record, and Plaintiff's First Amended Complaint. Their motion should be denied in its entirety.

### Conclusion

Efx. Defendants, know full well as a major long term player in the consumer reporting agency arena what the requirements of the FCRA are. They also know whether they have any information in their files that relates to Mr. Spencer that was not disclosed to him after his lawful request. Efx. Defendants should not be allowed to get away with first distorting the meaning of § 1681g then basing a claim that under this distortion they have complied with the law, they have not, and they also have not denied that they provided information to Lexus Nexus in their Motion to Dismiss. At this point with all the information provided by the Plaintiff in support of his FAC any reasonable person including the Court can assume there would be more information that was not disclosed as required under 15 U.S.C. § 1681g. Efx. Defendants' Motion to Dismiss should be denied and this case should go forward to Discovery to answer that question factually.

**WHEREFORE,** because the Defendants have failed to bring forth any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court DENY their Motion to Dismiss and allow Plaintiff's claim to move forward to trail on the merits. In the event the Court finds that Plaintiff has failed to state a claim as alleged by the Efx. Defendants, Plaintiff requests leave of this court to file an Amended Complaint to cure any deficiencies identified by the Court.

Respectfully Submitted,

Nathaniel Spencer III
2711 Chaparral St.
Kalamazoo MI 49006
269-599-7808
nathan.spenc.111@gmail.com

I hereby certify that a true and correct copy of the foregoing document was sent to the parties listed below via 1st class USPS on the date below.

**Counsel for Defendant Experian Information Solutions, Inc**
Autumn Hamit Patterson
Jones Day
2727 North Harwood St.
Dallas, Texas 75201
Office +1.214.969.2966
ahpatterson@jonesday.com


**Counsel for defendants Equifax,  INC./Equifax Information Services, LLC**
Kendall W. Carter |
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
(404) 572-2495 direct

**Counsel for Defendant Trans Union, LLC**
Sandra Davis Jansen, Esq, and Scott E. Brady, Esq.
SCHUCKIT & ASSOCIATES, P.C.
4545 Northwestern Drive
Zionsville, Indiana 46077
Telephone: (317) 363-2400
Facsimile: (317) 363-2257
E-mail: sjansen@schuckitlaw.com
**E-mail:  sbrady@schuckitlaw.com**


Dated May 29, 2018

Nathaniel Spencer III